UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUMANE SOCIETY INTERNATIONAL, 2100 L Street, NW Washington, DC 20037 <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES FISH AND WILDLIFE SERVICE, 1849 C Street, NW Washington, DC 20240; <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C Street, NW Washington, DC 20240; <br><br> SALLY JEWELL, in her official capacity as Secretary of United States Department of the Interior, 1849 C Street, NW Washington, DC 20240 <br><br> Defendants. | Civil Action No. 16-720 <br><br><br> **Complaint for Declaratory and Injunctive Relief** |

<u>**COMPLAINT**</u>

1.      Our planet is on the brink of a sixth mass extinction, with wildlife populations suffering catastrophic declines because of human actions, including unsustainable international trade in animals and their parts. The United States is one of the largest consumers of wildlife products, in part due to American trophy hunters who travel the globe to kill exotic species and legally import their heads and hides for personal fancy. To evaluate the conservation and animal welfare impacts of the wildlife trade for trophy hunting and other purposes, issues which are of

significant interest to the public, it is imperative that basic data pertaining to such transactions is transparent.

2.      The United States Fish and Wildlife Service ("FWS") uses an electronic database, the Law Enforcement Management Information System ("LEMIS"), to maintain records for the import and export of all wildlife specimens to and from the United States—including live animals and items such as elephant ivory, fur garments, scientific samples, and taxidermy. For years FWS routinely released this public information, including the identity of importers and exporters of animals and animal parts, and the declared value of the animal or item, pursuant to requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, without claiming any exemptions to disclosure. But in 2014, FWS suddenly changed its position (although it has applied its new position inconsistently) and decided that certain data categories were statutorily exempt from disclosure.

3.      This is an action under FOIA to compel disclosure of LEMIS data requested by Humane Society International ("HSI" or "Plaintiff"). HSI challenges FWS' arbitrary and capricious decision to reverse its well-established legal position that such information is public and to withhold information that FWS is required to make public via the mandates of FOIA and the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*.

#### JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B), 702, 706, and 28 U.S.C. § 1331.

5.      Venue is proper in the District of Columbia under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e). This action is brought against an agency of the United States and an officer of the United States acting in her official capacity, Defendants maintain offices in the District of

Columbia, and Plaintiff has its principal place of business in the District of Columbia. 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. § 1391(e).

<u>**PARTIES**</u>

6.      Plaintiff Humane Society International is a global non-profit organization, headquartered in Washington, D.C., with offices and programs around the world. HSI works to combat animal abuse and exploitation and to promote animal protection and welfare. HSI actively advocates against unsustainable trade in wildlife and regularly monitors the import and export of wildlife specimens. HSI provides its members, the public, and the press with information on a broad spectrum of wildlife issues, including trophy hunting, the exotic pet trade, the fur trade, shark finning, whaling, and poaching.

7.      Raw LEMIS data is critical to HSI's operations, and HSI maintains an internal database of more than a decade of LEMIS data obtained through FOIA requests, which is used to evaluate trends, inform organizational strategy to improve protections where needed, participate in administering the ESA under 16 U.S.C. §§ 1533(b)(3) and 1540(g), and keep the public informed on critical wildlife protection matters by collecting, distilling, and distributing data. HSI is the requestor of the public information at issue in this action and does not intend to use the requested information for commercial purposes.

8.      Defendant FWS is a federal governmental agency within the meaning of 5 U.S.C. § 552(f)(1), and is a bureau within the United States Department of the Interior ("DOI") that enforces federal wildlife laws and maintains the LEMIS database. FWS has possession and control of the records HSI requested, and as such, is subject to FOIA pursuant to 5 U.S.C. § 552(f).

9.     Defendant DOI is a federal governmental agency within the meaning of 5 U.S.C. § 552(f)(1) that encompasses FWS and the Office of the Solicitor. The Office of the Solicitor provided consultation to FWS on each of the FOIA responses at issue in this Complaint. The Office of the Solicitor is responsible for responding to administrative appeals of FWS FOIA decisions, and is the entity that constructively denied HSI's administrative appeals by failing to respond in a timely manner.

10.     Defendant Sally Jewell is the Secretary of DOI and has ultimate responsibility for decisions made by FWS, as a bureau within her Department, and by the Office of the Solicitor, as an office within her Department. She is sued in her official capacity.

## LEGAL FRAMEWORK

### *The Freedom of Information Act*

11.     FOIA requires agencies of the federal government to release information to the public upon request, unless the agency demonstrates that one of nine specific exemptions applies. 5 U.S.C. § 552(a)(3)(A), (b). FOIA "encourages accountability through transparency" and "is the most prominent expression of a profound national commitment to ensuring an open Government." Presidential Memorandum for Heads of Executive Departments and Agencies Concerning the Freedom of Information Act, 74 Fed. Reg. 4683, 4683 (Jan. 21, 2009). FOIA "should be administered with a clear presumption: In the face of doubt, openness prevails. . . . The presumption of disclosure should be applied to all decisions involving FOIA." *Id.*

12.     If the agency withholds any information responsive to a FOIA request, the agency must, within twenty working days, "immediately notify" the requestor "of determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i).

13. The agency has the burden to demonstrate that a particular exemption applies to the requested material, and to meet this burden the agency must provide precise and certain reasons for withholding confidential information in its response to a request. *Id.* § 552(a)(4)(B), (b). If the agency decides that portions of responsive records are exempt from disclosure, the agency must provide "[a]ny reasonably segregable portion" after redacting the exempt information, and must explain why the redacted portions were withheld. *Id.* § 552(b).

14. FOIA Exemption 4 allows an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." *Id.* § 552(b)(4).

15. FOIA Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6).

16. FOIA Exemption 7(C) allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

17. Upon receiving a FOIA request, an agency has twenty working days to respond to the request. *Id.* § 552(a)(6)(A)(i). A requestor may file an administrative appeal of an agency's failure to disclose requested records in part or in full. *Id.* § 552(a)(6)(A)(ii). An agency must make a determination on any such appeal within twenty working days. *Id.* However, a requestor is deemed to have exhausted its administrative remedies, and may seek immediate judicial review of the matter, if the agency fails to comply with either of these time limits. *Id.* § 552(a)(6)(C)(i).

18.     Judicial review of the agency's interpretation of a FOIA exemption is *de novo*. *Id.* § 552(a)(4)(B).

*The Administrative Procedure Act*

19.     The Administrative Procedure Act ("APA") provides for judicial review of final agency action for persons adversely affected or aggrieved by the agency action. *Id.* § 702.

20.     The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

21.     An agency action is arbitrary and capricious if the agency's analysis is internally inconsistent and inadequately explained. *Gen. Chem. Corp. v. United States*, 817 F.2d 844, 857 (D.C. Cir. 1987).

22.     An agency action is arbitrary and capricious if the agency diverges from prior policies and standards without providing a reasoned explanation for why it changed course. *Ramaprakash v. Fed. Aviation Admin.*, 346 F.3d 1121, 1124-25 (D.C. Cir. 2003).

*The Endangered Species Act*

23.     The ESA was developed to protect and recover imperiled species by establishing a system under which FWS lists certain species as either endangered or threatened with extinction and grants federal protections to such species. *See* 16 U.S.C. § 1531, *et seq.*

24.     Under the ESA, the importation of an animal (whether alive or dead, including animal parts and products) that is a member of a listed endangered species is prohibited unless FWS issues a permit after finding that the import is for scientific purposes or to enhance the propagation or survival of the species. *Id.* §§ 1538(a)(1)(A), 1539(a)(1)(A). The same prohibition generally applies to threatened species. 50 C.F.R. § 17.31.

25.     For persons seeking an import permit for endangered species, the ESA requires that FWS publish notice of such application—including the applicant's name—in the Federal Register, and allow the public to submit comments on such application. 16 U.S.C. § 1539(c). Interested parties can review the application materials for such permits online through www.regulations.gov, and such materials routinely contain information about the source of the import, including the name of the foreign exporter. Application materials for threatened species import permits are also publicly available from FWS upon request.

26.     Importations of endangered and threatened species are also entered into LEMIS.

*Additional Authority for Tracking International Wildlife Trade*

27.     The Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") is an international treaty that aims to prevent species from becoming endangered or extinct by restricting international trade. *See generally* Convention on International Trade in Endangered Species of Wild Fauna and Flora, March 3, 1973, T.I.A.S. No. 8249, 27 U.S.T. 1087. CITES imposes varying levels of legal protections on roughly 5,600 species of animals, directing the more than 180 member countries (including the United States) to adopt import and export permitting programs.

28.     CITES prioritizes oversight and transparency in tracking international trade in wildlife. Imports and exports of wildlife protected under CITES are reported by member countries and are compiled in the CITES Trade Database, which is publicly available through the CITES website. *See id.* art. 8.

29.     Species protected under CITES are also tracked through LEMIS when imported into the United States.

30.     FWS carries out the United States' CITES responsibilities under the ESA. *See* 16 U.S.C. § 1537a(a); 50 C.F.R. §§ 23.1-23.92.

31.     Even for species that are not listed under CITES or the ESA, FWS requires that upon every importation of wildlife or wildlife parts or products, the importer must complete a Declaration for Importation or Exportation of Fish or Wildlife form (Form 3-177, or "Declaration Form"). 50 C.F.R. § 14.61 (Declaration Forms required pursuant to FWS' authority under a host of federal statutes, including the ESA and the Lacey Act), *citing* 16 U.S.C. §§ 688, 704, 1382, 1538(d)-(f), 1540(f), 3371-3378, 4223-4244, and 4901-4916, 18 U.S.C. § 42.

32.     LEMIS developed as a method to organize information from these Declaration Forms, and first became operational in 1983, when FWS computerized the information collected from the Declaration Forms.

## FACTS GIVING RISE TO CAUSE OF ACTION

### *Importance of LEMIS Data*

33.     The United States is one of the largest consumers of the world's wild animals. The wildlife trade includes live animals (which may be sold as exotic pets, stock for game farms, or sent to biomedical research facilities or zoos), and their parts or products (which may be used in clothing, as ornamental objects, as food, as traditional medicine, or as trophies).

34.     The trade in wild animals and their parts is a serious threat to thousands of wildlife species worldwide and is a critical conservation concern. Forty percent of vertebrate animals that are either endangered or threatened with extinction today were brought to that point, in part, by the wildlife trade. While certain trade is recognized as unsustainable and is prohibited (e.g., imports of ivory from recently-killed elephants), existing federal law allows imports of myriad wildlife products (including more than 100,000 hunting trophies per year).

35.     Since FWS established LEMIS, FWS, private organizations, and the general public have used the data to analyze trade in various wildlife species. Such analyses are used to determine whether the rate of imports of wildlife and wildlife parts is sustainable and whether additional trade restrictions are necessary to promote conservation.

36.     LEMIS data provide key information that quantifies the role the United States plays in the trade in wild animal products. For example, HSI uses LEMIS data to identify the most common species and countries targeted for trophy hunting, to determine the value of ivory products being imported into the United States during a certain time period, and to determine the United States' role in the international trade of pangolin scales. This information is used to advocate for listing species under the ESA or CITES as well as to inform the public. *See, e.g.,* HSI & HSUS, Trophy Hunting by the Numbers: The United States' Role in Global Trophy Hunting     (Feb.     2016),     http://www.hsi.org/assets/pdfs/report_trophy_hunting_by_the.pdf (analyzing LEMIS data); Rachael Bale, *Hard Numbers Reveal Scale of America's Trophy-Hunting     Habit*,     National     Geographic     (Feb.     6,     2016), http://news.nationalgeographic.com/2016/02/160206-American-trophy-hunting-wildlife-conservation/ (based on Trophy Hunting by the Numbers).

37.     The identity of importers and exporters and the value of individual imports are significant factors for determining the United States' role in the wildlife trade. HSI has relied on such data in the past and plans to continue relying on such data in its efforts to protect wild animals.

38.     Although the LEMIS database is not always complete—as its data are based on forms submitted by members of the public who may have omitted certain information—LEMIS

nevertheless is the most comprehensive source of information about wildlife imports into the United States.

*FWS' History of Releasing All LEMIS Data*

39.    Each year from 2003-2013, HSI submitted a FOIA request to FWS requesting LEMIS data from the previous year. Each year during this time period FWS provided those data without redacting any information pursuant to § 552(b) of FOIA. Specifically, FWS released all "Foreign Importer/Exporter" data, "U.S. Importer/Exporter" data, and "Declared Value of Wildlife" data when requested without invoking § 552(b).

40.    HSI's corporate affiliate, The Humane Society of the United States ("HSUS"), also submitted several FOIA requests for LEMIS data from 2001-2014, and each time FWS provided that data without redacting any information pursuant to § 552(b) of FOIA. Specifically, FWS released all "Foreign Importer/Exporter" data, "U.S. Importer/Exporter" data, and "Declared Value of Wildlife" data when requested without invoking § 552(b).

41.    For over a decade FWS routinely and consistently released these three categories of data when requested, without any statutory redactions, to HSI and HSUS in response to at least the following FOIA requests:

    41.1.   HSUS FOIA request submitted on or around December 5, 2001 for LEMIS data relating to elephant parts;

    41.2.   HSI FOIA request submitted in or around Spring of 2003 for 2002 LEMIS data relating to all wildlife imports and exports;

    41.3.   HSUS FOIA request submitted on or around December 18, 2003 for LEMIS data relating to wildlife trophies;

41.4.    HSI FOIA request submitted in or around Spring of 2004 for 2003 LEMIS data relating to all wildlife imports and exports;

41.5.    HSI FOIA request submitted in or around Spring of 2005 for 2004 LEMIS data relating to all wildlife imports and exports;

41.6.    HSI FOIA request submitted in or around Spring of 2006 for 2005 LEMIS data relating to all wildlife imports and exports;

41.7.    HSUS FOIA request submitted on or around November 15, 2006 for LEMIS data relating to primate trophies;

41.8.    HSUS FOIA request submitted on or around November 15, 2006 for LEMIS data relating to terrapins;

41.9.    HSI FOIA request submitted in or around Spring of 2007 for 2006 LEMIS data relating to all wildlife imports and exports;

41.10.  HSI FOIA request submitted in or around Spring of 2008 for 2007 LEMIS data relating to all wildlife imports and exports;

41.11.  HSUS FOIA request submitted on or around July 24, 2008 for LEMIS data relating to fur imported from China;

41.12.  HSUS FOIA request submitted on or around February 10, 2009 for LEMIS data relating to fur;

41.13.  HSI FOIA request submitted in or around Spring of 2009 for 2008 LEMIS data relating to all wildlife imports and exports;

41.14.  HSUS FOIA request submitted on or around September 2, 2009 for LEMIS data relating to fur;

41.15.   HSI FOIA request submitted on or around April 28, 2010 for 2009 LEMIS data relating to all wildlife imports and exports;

41.16.   HSUS FOIA request submitted on or around August 31, 2010, for LEMIS data relating to fur;

41.17.   HSI FOIA request submitted on or around June 22, 2011 for 2010 LEMIS data relating to all wildlife imports and exports;

41.18.   HSUS FOIA request submitted on or around May 25, 2012 for LEMIS data relating to reptiles;

41.19.   HSI FOIA request submitted on or around June 8, 2012 for 2011 LEMIS data relating to all wildlife imports and exports;

41.20.   HSUS FOIA request submitted on or around March 20, 2013 for LEMIS data relating to fur;

41.21.   HSI FOIA request submitted in or around Spring of 2013 for 2012 LEMIS data relating to all wildlife imports; and

41.22.   HSUS FOIA request submitted on or around April 25, 2014 for LEMIS data relating to raccoon dogs.

42.      FWS routinely and consistently released these three categories of data when requested through May 3, 2014, the date on which FWS responded to HSUS' April 25, 2014 FOIA request by providing all three categories of data without statutory redactions. But shortly thereafter FWS reversed its position and began withholding large quantities of data.

43.      FWS also routinely releases the names of individual U.S. importers of endangered species, as well as their foreign exporters, pursuant to its duties under the ESA. *See, e.g.*, 81 Fed. Reg. 8093, 8094 (Feb. 17, 2016) (listing the names of multiple U.S. individuals importing sport-

hunted bontebok trophies); *Endangered Species; Marine Mammals; Receipt of Applications for Permit*, https://www.regulations.gov/#!docketBrowser;rpp=25;po=0;D=FWS-HQ-IA-2016-0040 (last visited March 24, 2016) (containing links to each of those individuals' permit applications, which include the names and addresses of the trophies' foreign exporters, among other information).

### *HSI's June 2, 2014 FOIA Request (FWS/LE ADM 4-08-2014-01045)*

44.     On June 2, 2014, one month after FWS released "Foreign Importer/Exporter," "U.S. Importer/Exporter," and "Declared Value of Wildlife" data to HSUS without invoking § 556(b), HSI submitted a FOIA request to FWS for electronic LEMIS records for the year 2013. HSI requested data on imports and exports of all animals of any taxonomic class, whether live, dead, parts, or products. HSI requested "the following variables be included in the records: control number, species code, class, genus, species, subspecies, generic name, specific name, wildlife description, quantity, unit, country of origin, country IE, Purpose, Source, Action, DP CD, Disp. Date, I/E, Port code, value, U.S. Importer/Exporter, Foreign Importer/Exporter." FWS has numbered this Request "FWS/LE ADM 4-08-2014-01045."

45.     On November 26, 2014, long after FWS' twenty working day deadline had passed, FWS responded to HSI's June 2, 2014 request with a letter response accompanied by spreadsheets of data and a key for identifying codes used in the spreadsheets.

46.     In the spreadsheets three categories of data were redacted: the "Declared Value of Wildlife" column was omitted in its entirety; the "Foreign Importer/Exporter" column was omitted in its entirety; and the "U.S. Importer/Exporter" data for many (but not all) individuals' names were omitted.

47.     In its letter response, FWS stated that it had withheld "Declared Value of Wildlife" and "Foreign Importer/Exporter" data under FOIA Exemption 4, and "U.S. Importer/Exporter" data for individuals under FOIA Exemptions 6 and 7(C). *See* 5 U.S.C. § 552(b)(4), (6), (7)(C). FWS based these redactions "on Departmental FOIA regulations and new supplemental guidance relating to business confidential information."

48.     FWS did not acknowledge or explain its departure from its long-held position that such information is public, nor did it identify any specific regulations or supplemental guidance. FWS did not acknowledge or explain why some "U.S. Importer/Exporter" individuals' names were redacted, whereas others were not.

49.     The response letter stated that FWS decided to withhold information in consultation with DOI's Office of the Solicitor.

50.     On December 10, 2014, HSI wrote to FWS requesting FWS to reconsider its redactions in light of the fact that HSI and HSUS routinely requested LEMIS data and FWS routinely provided LEMIS data without redactions. HSI pointed out that FWS had released the redacted categories of information to HSUS in May 2014—just one month before HSI's FOIA request—and that HSUS and HSI obtained the redacted information from FWS going back to at least 2003. Furthermore, HSI stated, FWS made an arbitrary decision to now withhold this information based on "Departmental FOIA regulations" that had not changed since May 2014, and based on unidentified "new supplemental guidance" that had not been provided and for which there was no apparent record on the Federal Register or on FWS' website.

51.     On January 7, 2015, FWS sent HSI a modified response to its FOIA request. FWS Identified 43 C.F.R. §§ 2.26-2.36 (effective January 2013) as the "Departmental FOIA regulations" on which FWS relied in withholding LEMIS data under FOIA Exemption 4. FWS

further directed HSI to visit DOI's website for the Department's "supplemental guidance and FOIA regulations pertaining to business confidential information."

52.     In its modified response, FWS failed to explain why some of the LEMIS data was exempt from disclosure under FOIA Exemptions 6 and 7(C) and pointed to no supplemental guidance or regulations relating to those Exemptions.

53.     FWS offered to release overall summary values of all animals of any class for the year 2013, and offered to provide further breakdown of values at a lower taxonomic level, but refused to release the three redacted categories of raw LEMIS data. FWS also informed HSI that, while it was providing its modified response on January 7, 2015, HSI's administrative FOIA appeal would still be due on January 12, 2015.

54.     On January 12, 2015, HSI submitted an administrative FOIA appeal to DOI.

55.     In its appeal, HSI argued that:

55.1.   FOIA Exemption 4 does not apply to the "Declared Value of Wildlife" and "Foreign Importer/Exporter" data, because this information is not confidential under the relevant legal standard;

55.2.   FOIA Exemptions 6 and 7(C) do not apply to "U.S. Importer/Exporter" data for individuals, because there is no privacy interest at issue, and even if there were, the public interest in disclosing this information clearly outweighs any privacy interest;

55.3.   FOIA Exemption 7(C) does not apply to "U.S. Importer/Exporter" data for individuals, because this data was not compiled for law enforcement purposes; and

55.4.   FWS' redactions were arbitrary and capricious, because FWS did not adequately explain its change in policy.

56.   On July 15, 2015, FWS sent HSI a letter acknowledging the appeal ("Appeal Number 2015-048"). In this letter, FWS stated that it had not responded to the appeal within the statutory twenty working day deadline "because of a shortage in staff, an extraordinarily large number of appeals pending in the Department ahead of [HSI's], the need to fully review the issues [HSI] presented in your appeal, and other unforeseen circumstances." FWS stated that it would make every effort to reach a decision regarding the appeal "within the next few weeks," but acknowledged HSI's right to seek immediate judicial review.

57.   As of the date of this Complaint, long after FWS' twenty working day deadline, HSI has received no decision on its appeal.

*HSI's August 21, 2014 FOIA Request, FWS/LE ADM 4-08-2014-01277*

58.   On August 21, 2014, HSI submitted a FOIA request to FWS for electronic LEMIS records for the years 2002-2010 to collect additional information that HSI had not requested in past years' annual FOIA requests. HSI requested data on imports and exports of all animals of any taxonomic class, whether live, dead, parts or products. HSI requested "the following variables be included in the records: control number, species code, class, genus, species, subspecies, generic name, specific name, wildlife description, quantity, unit, country of origin, country IE, Purpose, Source, Action, DP CD, Disp. Date, I/E, Port code, value, U.S. Importer/Exporter, Foreign Importer/Exporter." FWS numbered this Request "FWS/LE ADM 4-08-2014-01277."

59.     On May 6, 2015, long after FWS' twenty working day deadline passed, FWS responded to HSI's August 21, 2014 request with a letter response accompanied by spreadsheets of data and a key for identifying codes used in the spreadsheets.

60.     In the spreadsheets three categories of data were redacted: the "Declared Value of Wildlife" column was omitted in its entirety; the "Foreign Importer/Exporter" column was omitted in its entirety; and the "U.S. Importer/Exporter" data for many (but not all) individuals' names were omitted.

61.     In its letter response, FWS stated that it had withheld "Declared Value of Wildlife" and "Foreign Importer/Exporter" data under FOIA Exemption 4, and "U.S. Importer/Exporter" data under FOIA Exemptions 6 and 7(C). *See id.* § 552(b)(4), (6), (7)(C).

62.     FWS did not acknowledge that it had completely reversed its legal interpretation of FOIA that it had held from at least 2002 through May 2014. FWS did not acknowledge or explain its departure from its position that such information is public, and did not even refer generally to any new Departmental regulations or supplemental guidance. FWS did not acknowledge or explain why some "U.S. Importer/Exporter" individuals' names were redacted, whereas others were not.

63.     The response letter stated that FWS decided to withhold information in consultation with DOI's Office of the Solicitor.

64.     On July 16, 2015, HSI submitted an administrative FOIA appeal to DOI challenging FWS' response to HSI's August 21, 2014 request, arguing that the exemptions were misapplied (consistent with Paragraph 55, above).

65.     As of the date of this Complaint, long after FWS' twenty working day deadline, HSI has received no response to its July 16, 2015 appeal.

*HSI's June 3, 2015 FOIA Request, FWS/LE ADM 4-08-2015-01005*

66.     On June 3, 2015, HSI submitted a FOIA request to FWS for electronic LEMIS records for the year 2014. HSI requested data on imports and exports of all animals of any taxonomic class, whether live, dead, parts or products. HSI requested "the following variables be included in the records: control number, species code, class, genus, species, subspecies, generic name, specific name, wildlife description, quantity, unit, country of origin, country IE, Purpose, Source, Action, DP CD, Disp. Date, I/E, Port code, value, U.S. Importer/Exporter, Foreign Importer/Exporter." FWS has numbered this Request "FWS/LE ADM 4-08-2015-01005."

67.     On June 17, 2015, FWS responded to HSI's June 3, 2015 request with a letter response accompanied by spreadsheets of data and a key for identifying codes used in the spreadsheets.

68.     In the spreadsheets three categories of data were redacted: the "Declared Value of Wildlife" column was omitted in its entirety; the "Foreign Importer/Exporter" column was omitted in its entirety; and the "U.S. Importer/Exporter" data for many (but not all) individuals' names were omitted.

69.     In its letter response, FWS stated that it had withheld "Declared Value of Wildlife" and "Foreign Importer/Exporter" data under FOIA Exemption 4, and "U.S. Importer/Exporter" data under FOIA Exemptions 6 and 7(C). *See id.* § 552(b)(4), (6), (7)(C).

70.     FWS did not acknowledge that it had completely reversed its legal interpretation of FOIA that it had held from at least 2002 through May 2014. FWS did not acknowledge or explain its departure from its position that such information is public, and did not even refer generally to any new Departmental regulations or supplemental guidance. FWS did not

acknowledge or explain why some "U.S. Importer/Exporter" individuals' names were redacted, whereas others were not.

71.    The response letter stated that FWS decided to withhold information in consultation with DOI's Office of the Solicitor.

72.    On July 16, 2015, HSI submitted an administrative FOIA appeal to DOI challenging FWS' response to HSI's June 3, 2015 request and FWS' response to HSI's August 21, 2014 request, arguing that the exemptions were misapplied (consistent with Paragraph 55, above).

73.    As of the date of this Complaint, long after FWS' twenty working day deadline, HSI has received no response to its July 26, 2015 appeal.

74.    In response to all three of HSI's FOIA requests (FWS/LE ADM 4-08-2014-01045, FWS/LE ADM 4-08-2014-01277, and FWS/LE ADM 4-08-2015-01005) FWS redacted and withheld three categories of LEMIS data:  "Declared Value of Wildlife" data; "U.S. Importer/Exporter" data for individuals' names; and "Foreign Importer/Exporter" data. HSI appealed all three of these responses on the same legal and factual grounds.

## CLAIMS FOR RELIEF

*Count I: Defendants Failed to Adhere to Statutory Deadlines in Responding to*

*HSI's FOIA Requests*

75.    Plaintiff hereby incorporates by reference Paragraphs 1-74 as if fully set forth herein.

76.    FWS failed to issue a determination as to Plaintiff's June 2, 2014 FOIA request (FWS/LE ADM 4-08-2014-01045) until November 26, 2014, well in excess of FOIA's twenty working day deadline. *Id.* § 552(a)(6)(A)(i).

77.     FWS failed to issue a determination as to Plaintiff's August 21, 2014 FOIA request (FWS/LE ADM 4-08-2014-01277) until May 6, 2015, well in excess of FOIA's twenty working day deadline. *Id.*

78.     FWS failed to issue a determination as to Plaintiff's January 12, 2015 administrative FOIA appeal (Appeal Number 2015-048) and Plaintiff's July 16, 2015 administrative FOIA appeal within FOIA's twenty working day deadline, and has yet to issue such determinations as of the date of this Complaint. *Id.* § 552(a)(6)(A)(ii).

79.     Therefore, FWS failed to adhere to FOIA's statutory deadlines, in violation of 5 U.S.C. § 552(a)(6)(A)(i) and (ii), and unlawfully constructively denied HSI's administrative appeals.

*Count II: Defendants Unlawfully Withheld Records that are Required to be Released*

80.     Plaintiff hereby incorporates by reference Paragraphs 1-79 as if fully set forth herein.

81.     Plaintiff has a statutory right of access to the public records requested under FOIA, 5 U.S.C. § 552(a)(3), and there is no lawful basis for Defendants' withholding of the three redacted categories of LEMIS data under FOIA Exemption 4, 6, or 7(C), in response to HSI's June 2, 2014 FOIA request, HSI's August 21, 2014 FOIA request, or HSI's June 3, 2015 FOIA request. *Id.* § 552(a)(3)(A), (b)(4), (b)(6), (b)(7)(C).

82.     "Declared Value of Wildlife" and "Foreign Importer/Exporter" data are not exempt as "trade secrets and commercial or financial information obtained from a person" that are "privileged or confidential" under FOIA Exemption 4. *Id.* § 552(b)(4). As the Government requires importers and exporters to provide this information, public disclosure would not impair the Government's ability to obtain the same information in the future, nor would there be

substantial harm to the competitive position of importers and exporters providing this data to FWS. As the identities of foreign exporters of endangered species are public information pursuant to the ESA, these data cannot be privileged or confidential. *See* 16 U.S.C. § 1539(c). Therefore, "Declared Value of Wildlife" and "Foreign Importer/Exporter" data are not protected from disclosure under FOIA Exemption 4.

83.     "U.S. Importer/Exporter" data for individuals' names are not exempt as "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" under FOIA Exemption 6. 5 U.S.C. § 552(b)(6). Defendants released some individuals' names while redacting others, and the names of U.S. importers of endangered species are public information pursuant to the ESA. *See* 16 U.S.C. § 1539(c). The public interest in being able to track the wildlife and wildlife parts coming into the United States clearly outweighs any alleged privacy interest implicated in releasing these names. Therefore, "U.S. Importer/Exporter" data for individuals' names are not protected from disclosure under FOIA Exemption 6.

84.     "U.S. Importer/Exporter" data for individuals' names are not exempt as "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(7)(C). Records are not compiled for law enforcement purposes merely because they were compiled by an agency that has law enforcement powers. As FWS has alleged no enforcement proceeding or particular incident at issue regarding the redacted individuals, their names were not compiled for law enforcement purposes. Therefore, "U.S. Importer/Exporter" data for individuals' names are not protected from disclosure under FOIA Exemption 7(C).

85. As the requested records were improperly withheld under Exemptions 4, 6, and 7(C), Defendants violated Plaintiff's legal right to access these records under 5 U.S.C. § 552(a)(3).

## Count III: Defendants Unlawfully Failed to Explain

## Their Withholdings

86. Plaintiff hereby incorporates by reference Paragraphs 1-85 as if fully set forth herein.

87. Defendants failed to meaningfully notify Plaintiff of the reasons for their withholdings, as their withholdings were both internally inconsistent and inadequately explained, in violation of FOIA. *Id.* § 552(a)(6)(A)(i).

88. Defendants' November 26, 2014 FOIA response (modified January 7, 2015), Defendants' May 6, 2015 FOIA response, and Defendants' June 17, 2015 FOIA response (collectively, "Defendants' Responses") were each final agency actions. Defendants have constructively denied Plaintiff's appeal, and Plaintiff has exhausted all of its administrative remedies. *Id.* § 552(a)(6)(A)(ii), (a)(2)(C).

89. Defendants' Responses were internally inconsistent. In each spreadsheet of LEMIS data Defendants arbitrarily redacted only *some* of the U.S. individual importers' names, while choosing not to redact others. Defendants provided no explanation for this disparate treatment of data.

90.     Defendants arbitrarily redacted the foreign exporters and the names of individual U.S. importers of endangered species, despite the fact that FWS releases these data under the ESA. Defendants provided no explanation for this disparate treatment of data.

91.     Defendants' Responses also reflect a material reversal in Defendants' long-held legal interpretation of 5 U.S.C. § 552(b)(4), (b)(6), and (b)(7)(C) from at least 2002 through May 2014, during which period of time FWS never omitted the "Declared Value of Wildlife" column, "U.S. Importer/Exporter" data for individuals, or the "Foreign Importer/Exporter" column pursuant to these FOIA exemptions when responsive to an HSI or HSUS request.

92.     In each of Defendants' Responses, Defendants failed to explain why they arbitrarily changed course in their legal interpretation and administration of FOIA (by redacting information that they routinely and consistently released to HSI and HSUS when requested for over a decade), in violation of the APA. 5 U.S.C. § 706(2)(A).

## RELIEF REQUESTED

Wherefore, Plaintiff requests that this honorable Court:

A. Declare that Defendants' withholding of the three categories of LEMIS data is unlawful under FOIA;

B. Declare that Defendants' constructive denial of Plaintiff's FOIA requests by failure to adhere to required statutory deadlines is unlawful under FOIA;

C. Declare that Defendants failed to meaningfully notify Plaintiff of the reasons for their withholdings, since Defendants' withholdings were internally inconsistent and inadequately explained, in violation of FOIA;

D. Declare that Defendants' withholdings of the three categories of LEMIS data must be set aside as arbitrary and capricious under the APA;

E.  Order Defendants to make the requested records available within ten working days;

F.  Award Plaintiff its costs and reasonable attorney's fees, pursuant to 5 U.S.C. § 552(a)(4)(E)(i); and

G.  Award Plaintiff any other relief that is just and proper.

Respectfully submitted this 18th day of April, 2016

/s/ Laura Friend
Laura Friend (D.D.C. Bar No. NY0217)
The Humane Society of the United States
2100 L Street NW
Washington, D.C. 20037
lfriend@humanesociety.org
Phone: (202) 676-2331
Fax: (202) 676-2357

/s/ Anna Frostic
Anna Frostic (D.C. Bar No. 977732)
The Humane Society of the United States
2100 L Street NW
Washington, D.C. 20037
afrostic@humanesociety.org
Phone: (202) 676-2333
Fax: (202) 676-2357

*Attorneys for Plaintiff*