HUMANE SOCIETY INTERNATIONAL,

        *Plaintiff*,

     v.

U.S. FISH AND WILDLIFE SERVICE *et al.*,

        *Defendants*,

and

SAFARI CLUB INTERNATIONAL,

        *Defendant-Intervenor*.

Civil Action No. 16-720 (TJK)

## MEMORANDUM OPINION AND ORDER

Humane Society International, a nonprofit organization that promotes animal

conservation and welfare, requested records concerning the import and export of wildlife that the

U.S. Fish and Wildlife Service maintains in its Law Enforcement Management Information

System. The agency released the records but redacted certain categories of information under

exemptions in the Freedom of Information Act for commercial, private personal, and law

enforcement information. In this lawsuit, Humane Society International challenges those

redactions as unlawful and asserts a claim under the Administrative Procedure Act, alleging that

the agency had previously released these types of information but has changed its practice

without adequate explanation. Safari Club International, a nonprofit organization whose

members import wildlife, intervened as a defendant to prevent the disclosure of the names of its

members in the records at issue.

The parties have cross-moved for summary judgment. At issue are the two categories of

information that the agency redacted from the records it released: (1) the declared monetary

value of the wildlife, which the agency withheld as confidential business information under

Exemption 4, and (2) the names of individual wildlife importers and exporters, which the agency

withheld as private personal information under Exemption 6 and as law enforcement records

containing such information under Exemption 7(C). For the reasons explained below, the Court

will deny without prejudice Humane Society International's and Defendants' motions for

summary judgment as to the withholdings under Exemption 4; grant summary judgment for

Defendants and Safari Club International as to the withholdings under Exemption 7(C); and

grant summary judgment for Defendants on the Administrative Procedure Act claim.[1]

## I.      Factual and Procedural Background

### A.      The Law Enforcement Management Information System

The U.S. Fish and Wildlife Service (FWS), an agency within the Department of the

Interior, maintains the Law Enforcement Management Information System (LEMIS), an

electronic database that houses information about violations of wildlife regulations, legal and

illegal wildlife trade, and declared imports and exports of wildlife. Defs.' SOF ¶¶ 3–5. Law

enforcement officers routinely access LEMIS and use it as the portal for gathering and sharing

intelligence between law enforcement offices around the country. *Id*. LEMIS includes

information that importers and exporters submit through Form 3-177, the "Declaration for

Importation and Exportation of Fish or Wildlife." *Id.* ¶ 6. With some narrow exceptions, anyone

---

[1] In ruling on these motions, the Court considered all relevant filings, including but not limited to the following: ECF No. 1 ("Compl."); ECF No. 29-1 ("Decl. of Hyde-Michaels"); ECF No. 29-2 ("Vaughn Index"); ECF No. 32, Defendants' Motion for Summary Judgment ("Defs.' MSJ"); ECF No. 32, Statement of Material Facts as to Which There Is No Genuine Dispute ("Defs.' SOF"); ECF No. 34; ECF No. 36, Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' and Defendant-Intervenor's Motions for Summary Judgment ("Pl.'s MSJ"); ECF No. 36, Statement of Material Facts as to Which There Is No Genuine Dispute ("Pl.'s SOF"); ECF No. 36-1 ("Decl. of Peyman"); ECF No. 37; ECF No. 41; ECF No. 44 ("Intvrs.' Reply"); ECF No. 45 ("Pl.'s Reply").

importing or exporting wildlife products must submit Form 3-177 before doing so. Pl.'s SOF ¶ 23; *see also* 50 C.F.R. §§ 14.61–64. Form 3-177 requests several categories of information, including the declared monetary value of the wildlife being imported or exported, the name of the U.S. importer or exporter, and the name of the foreign importer or exporter. Defs.' SOF ¶ 8; Pl.'s SOF ¶ 24.

### B. Humane Society International's Freedom of Information Act Requests

In 2014 and 2015, Humane Society International (HSI) made three requests of FWS under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking records from LEMIS.[2] Pl.'s SOF ¶ 27. In response to each request, FWS released some records but redacted several categories of information in the records. *See* Vaughn Index. Relevant here, FWS withheld the declared monetary value of the wildlife and the name of the foreign importer or exporter under FOIA Exemption 4, and the name of the U.S. importer or exporter under FOIA Exemptions 6 and 7(C). Pl.'s SOF ¶ 28. HSI administratively appealed FWS's responses to all three of its FOIA requests but never received a final determination on any of them. Pl.'s SOF ¶ 30.

### C. This Action

After the constructive denial of its administrative appeals, HSI filed this lawsuit against FWS, the U.S. Department of the Interior, and the Secretary of the Department of the Interior (collectively, "Defendants"), asserting that the redactions were improper. Compl. ¶¶ 75–85. HSI also brought a claim under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*,

---

[2] The first request, on June 2, 2014, asked for LEMIS records from 2013 about all wildlife products, including information on "control number, species code, class, genus, species, subspecies, generic name, specific name, wildlife description, quantity, unit, country of origin, country IE, Purpose, Source, Action, DP CD, Disp. Date, I/E, Port code, value, U.S. Importer/Exporter, [and] Foreign Importer/Exporter." ECF No. 36-1 ¶ 29. The second request, on August 21, 2014, asked for the same information from 2002 to 2010. *Id.* ¶ 39. The third request, on June 3, 2015, asked for the same information from 2014. *Id.* ¶ 45.

asserting that FWS failed to adequately explain its decision to withhold these categories of information given that on prior occasions it had released them in response to HSI's FOIA requests. *Id.* ¶¶ 86–92.

As this case proceeded, FWS released additional information that HSI had requested. *See* ECF Nos. 14, 18, 22–25, 27. And several months after the complaint was filed, Safari Club International (SCI) filed an unopposed motion to intervene as of right as a defendant, which the Court granted. *See* ECF No. 16; Minute Order of August 19, 2016.

FWS's regulations require consultation with those who have submitted information to FWS before it releases any information that may be protected by FOIA Exemption 4 as confidential business information. *See* 43 C.F.R. §§ 2.29–2.34 (requiring federal agencies to consult submitters before the release of information the agency believes may be protected by Exemption 4). So in late 2016, FWS published a notice in the Federal Register soliciting comments from companies and individuals who had submitted Form 3-177 and whose information was subject to HSI's FOIA requests. Pl.'s SOF ¶ 33; Defs.' SOF ¶¶ 30–31. FWS solicited their views on whether the declared monetary value and name of the foreign importer or exporter on Form 3-177 should be withheld under Exemption 4.[3] *See* 81 Fed. Reg. 75,838 (Nov. 1, 2016).

Out of approximately 12,000 individuals and entities whose information was at issue, 113 companies and 1,429 individuals objected to the release of their information. *See* Defs.' SOF ¶ 33; Pl.'s SOF ¶ 37. The 113 companies asserted that their information at issue was confidential

---

[3] At the time FWS solicited these comments, the controlling test for whether information was confidential within the meaning of FOIA Exemption 4 came from the D.C. Circuit case *National Parks and Conservation Association v. Morton*, 498 F.2d 765 (D.C. Cir. 1974). The Federal Register notice solicited comments addressing the relevant factors under the *National Parks* test. But, as discussed below, the Supreme Court has since abrogated that test.

business information covered by Exemption 4.  Pl.'s SOF ¶ 37.  FWS reviewed these objections and determined that 93 companies had shown that withholding that information under Exemption 4 was warranted.  Defs.' SOF ¶¶ 56–57.  For the 1,429 individuals who objected to the release of their information, FWS withheld only their names under Exemptions 6 and 7(C) and released all other categories of the information from the forms they submitted.  *Id.* ¶¶ 35–36, 38.  Since then, FWS has clarified that it no longer relies on Exemption 4 to withhold the names of the foreign importers or exporters, but instead relies on Exemptions 6 and 7(C).  Defs.' SOF ¶¶ 26–27; Decl. of Hyde-Michaels ¶ 13.

## II.     Legal Standards

FOIA cases are typically resolved on summary judgment motions, which "[t]he court shall grant . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  A factual dispute is material if it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Under FOIA, a federal agency must "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions."  *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008).  There is a "strong presumption in favor of disclosure," which "places the burden on the agency to justify the withholding of any requested documents."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* (*CREW I*), 746 F.3d 1082, 1088 (D.C. Cir. 2014).  An agency can meet its burden by submitting affidavits or sworn declarations that

"describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *PETA v. U.S. Dep't of Health & Human Servs.* (*PETA*), 901 F.3d 343, 349 (D.C. Cir. 2018) (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## III. Analysis

### A. Withholdings Under FOIA

#### 1. Exemption 4

FOIA Exemption 4 permits federal agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). Until recently, the applicable test for whether records submitted involuntarily to an agency fell under Exemption 4 was set forth by the D.C. Circuit in *National Parks and Conservation Association v. Morton*, 498 F.2d 765 (D.C. Cir. 1974). Under the *National Parks* test, Exemption 4 covered information that, if disclosed, would either (1) "impair the Government's ability to obtain necessary information in the future," or (2) "cause substantial harm to the competitive position of the person from whom the information was obtained." *Id.* at 770; *see also PETA*, 901 F.3d at 350. Further, the Circuit held, the disclosure of involuntarily provided information presumptively did not impair the government's ability to obtain necessary information in the future. *See Nat'l Parks I*, 498 F.2d at 770; *In Defense of Animals v. USDA*, 656 F. Supp. 2d 68, 72 (D.D.C. 2009).

Recently, however, the Supreme Court abrogated the *National Parks* test in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019). The Court held that confidentiality under Exemption 4 does not depend on whether disclosure of the information would cause substantial competitive harm, but whether the entity sharing the information

typically kept it private. *Id.* at 2363–64. The Court held open the possibility that confidential information might lose that character if it were provided to the government without any assurance that the information would remain confidential, but it did not need to decide that issue to resolve the case. *Id.* at 2363. "At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy," the Court held, "the information is 'confidential' within the meaning of Exemption 4." *Id.* at 2366.

FWS relies on Exemption 4 to justify its redactions of the declared monetary value of the wildlife imported or exported. But the parties' briefing on Exemption 4 focuses on the *National Parks* test, as it was the controlling law when they filed their briefs. And, on the current record, the Court cannot determine how the factors in the new *Food Marketing Institute* test apply to these withholdings. The Court will therefore deny without prejudice HSI's and Defendants' motions for summary judgment on Exemption 4 so that the parties may brief the issue in light of *Food Marketing Institute*.

### 2.      Exemption 7(C)

FWS relies on Exemptions 6 and 7(C) to redact the names of the foreign and U.S. importers or exporters listed on Form 3-177. "When information is claimed to be exempt from disclosure under both provisions, courts 'focus . . . on Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material.'" *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 854 F.3d 675, 682 (D.C. Cir. 2017) (quoting *CREW I*, 746 F.3d at 1091 n.2). Exemption 7(C) allows withholding of (1) "records or information compiled for law enforcement purposes" if they (2) "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

### a. Compiled for Law Enforcement Purposes

For an agency to show that it compiled records for a law enforcement purpose, it must

show "a rational nexus" between those records and the agency's responsibility to investigate

"violation[s] of federal law." *See Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice* (*CNSS*), 331

F.3d 918, 926 (D.C. Cir. 2003) (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir.

1998)). These violations may be either civil or criminal. *See Pub. Emps. for Envtl.*

*Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203

(D.C. Cir. 2014). And enforcement includes more than just "investigating and prosecuting

individuals *after* a violation of the law." *Id.* (emphasis in original).

The Court concludes that the records at issue in LEMIS were compiled for law

enforcement purposes within the meaning of Exemption 7(C).[4] FWS represents that LEMIS is

"utilized by all FWS law enforcement offices" and "serves as the portal in which all FWS

[violations of wildlife regulations] are documented and intelligence is gathered and shared

between law enforcement offices across the country." Decl. of Hyde-Michaels ¶ 2. LEMIS also

houses data related to all declared "imports and exports of wildlife products," which enables

FWS to use the database to both identify and proactively prevent violations of its regulations. *Id.*

For example, FWS records an animal's scientific name to "determine if the animal is legal under

Federal, State, tribal and foreign law" and to identify "which imports and exports need special

permits and which are prima facie illegal." *Id.* ¶ 4. And FWS uses information on the declared

monetary value of wildlife products "to verify compliance with the reported [U.S. Customs and

Border Protection] values at the time of import and export and to help determine appropriate

---

[4] The Court so holds even though it owes no deference to FWS's assertion that information
maintained in LEMIS is compiled for law enforcement purposes, because law enforcement is not
FWS's principal function. *See Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 64 (D.C. Cir. 2018).

monetary penalties for violations." *Id.* For these reasons, the records at issue in LEMIS have a

"rational nexus" to FWS's duty to enforce laws governing the import and export of wildlife

products. *See CNSS*, 331 F.3d at 926.

HSI asserts that these records are not compiled for law enforcement purposes because

they are "compiled routinely and habitually, . . . as required for *every* lawful import or export of

any wildlife specimen." Pl.'s MSJ at 32. Further, HSI argues, FWS has not connected the

LEMIS data "to any enforcement proceeding or . . . investigation of any individual or particular

incident." *Id.* at 33. But the D.C. Circuit has held that Exemption 7(C) may apply "even when

the materials have not been compiled in the course of a specific investigation." *Tax Analysts v.*

*IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002). And another court in this district recently rejected a

similar argument that records collected for "routinized oversight" could not have been compiled

for law enforcement purposes within the meaning of Exemption 7(C). *See Humane Soc'y of U.S.*

*v. Animal & Plant Health Inspection Serv.*, No. 18-646 (TNM), 2019 WL 2342949 at *8–*9.

(D.D.C. June 3, 2019); *see also Long v. Immigration & Customs Enf't*, 149 F. Supp. 3d 39, 49

(D.D.C. 2015) (describing records in an immigration-related database as "not the kind of records

compiled for generalized snooping of individuals' lives, but . . . prepared to effectuate the

agencies' law enforcement responsibilities"). For these reasons, given the agency's explanation

of how it uses these LEMIS records to monitor the import and export of wildlife products and to

enforce the relevant laws, the Court is satisfied that FWS compiled the LEMIS records at issue

"for law enforcement purposes" under Exemption (7)(C).

b.  **Unwarranted Invasion of Personal Privacy**

FWS withheld the names of individuals listed in the "U.S. Importer/Exporter" column

and the "Foreign Importer/Exporter" column of the Form 3-177s maintained in LEMIS to protect

individuals' privacy. Decl. of Hyde-Michaels at ¶¶ 13, 15, 18. Again, these withholdings were

proper only if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "The term 'unwarranted' requires [the Court] to balance the [individuals'] privacy interest against the public interest in disclosure." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press* (*RCFP*), 489 U.S. 749, 762 (1989)). Importantly, "[t]o effect this balance and to give practical meaning to the exemption, the usual rule that the citizen need not offer a reason for requesting the information must be inapplicable." *Id.* at 172.

Typically, individuals have a privacy interest in preventing the disclosure of information compiled for law enforcement purposes. The Supreme Court has recognized that requests for "law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy." *RCFP*, 489 U.S. at 780. In fact, an individual's privacy interest is "at its apex" when, as here, "information is in the Government's control as a compilation, rather than as a record of what the Government is up to." *Id.* (quotation marks omitted). Exemption 7(C) therefore requires courts "to protect, in the proper degree, the personal privacy of citizens against the uncontrolled release of information compiled through the power of the State." *Favish*, 541 U.S. at 172. After all, "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." *RCFP*, 489 U.S. at 765.

Defendants argue that the individuals whose names have been withheld have an interest in keeping their names private. Defs.' MSJ at 15; Decl. of Hyde-Michaels ¶ 17 (explaining that FWS found that private individuals identified in the LEMIS database have a "substantial privacy interest in their personal information"). Similarly, SCI contends that these individuals have a privacy interest in preventing the public from "connect[ing] their names with the other information already disclosed." Intvrs.' Reply at 3. The Court agrees. These individuals have

an interest in keeping their names from being disclosed to the public alongside the details of their private activity importing or exporting wildlife. And that interest is "at its apex" here, where the government has compiled information about private citizens. *RCFP*, 489 U.S. at 780.[5]

HSI argues that the privacy interest is at most *de minimis*, in part because hunters (including members of SCI) "have voluntarily chosen to engage in the highly regulated activity of international trophy hunting." Pl.'s MSJ at 35. But simply because these individuals have decided to engage in a regulated activity does not mean they have no privacy interest in the information they must provide the government in connection with that activity. HSI also contends that hunters' privacy interests in their names is "disingenuous" because they "routinely self-identify and defend their activities" through media sources such as "photographs posted online" and "public statements." Pl.'s Reply at 13. Perhaps some do. But HSI has not requested information about *particular* hunters' self-publicized import and export activities. It has requested the name of *every* individual who filled out Form 3-177 for eleven years. *See* Decl. of Peyman ¶¶ 29, 39, 45. There is no indication in the record that any more than a small, unknown subset of these individuals have publicized their activity in a way that is inconsistent with maintaining their privacy.

Because Defendants have identified a privacy interest in these individuals' names, the Court must next determine whether HSI has "establish[ed] a sufficient reason for the disclosure."

---

[5] Defendants also argue that the individuals' names should be kept private because they "reasonably foresee[] that disclosure of this information could result in harassment or worse by those who choose to picket homes or publicize the names of those associated with animal imports." Defs.' MSJ at 15; Decl. of Hyde-Michaels ¶ 18. SCI adds that although HSI may not itself harass hunters, it may still "publicize the names" and thereby enable others to "use the names in inappropriate and harassing ways." Intvrs.' Reply at 1. Plaintiffs disclaim any intention to publicize these names and dismiss these concerns as speculation. Pl.'s Reply at 13–14. The Court need not resolve this dispute because even without the potential for harassment of these individuals, the balance of the interests tips against disclosure.

*Favish*, 541 U.S. at 172.  To do so, HSI first "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake.  Second, [HSI] must show the information is likely to advance that interest.  Otherwise, the invasion of privacy is unwarranted."  *Id.*  "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *CREW I*, 746 F.3d at 1093 (quoting *Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994)); *see also RCFP*, 489 U.S. at 780 (explaining that when a FOIA request "seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion is 'unwarranted'").

HSI argues that having the importers' and exporters' names might, in fact, bring FWS misfeasance to light.  But when the public interest asserted is to show that agency officials acted "improperly in the performance of their duties," the requestor must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  *Favish*, 541 U.S. at 174.  In *Favish*, the Supreme Court explained that although there was a significant public interest in uncovering possible misfeasance in the Government's investigation of a White House official's death, the lower court erred in accepting the stated public interest without requiring a "particular showing" that "evidence points with credibility to some actual misfeasance or other impropriety."  *Id.* at 173.  Relying on the presumption of legitimacy accorded to the Government's official conduct, the Court found that the public interest did not outweigh the privacy interests of the victim's family in death-scene photographs because there was no clear evidence of agency officials' misconduct.  *Id.* at 174.

Likewise, HSI's speculation on this score is insufficient. HSI advances no "particular

showing" of credible evidence of misfeasance on FWS's part in enforcing the laws related to

wildlife imports and exports. HSI argues that disclosing individuals' names "serves the critical

public purpose of monitoring what wildlife FWS lets into and out of the country with whom, and

whether FWS is fulfilling its statutory duties." Pl.'s Reply at 19; *see also* Pl.'s MSJ at 39–41.

For example, HSI contends that it needs the names of individuals to determine whether FWS is

complying with domestic and international laws that limit the number of hunting trophies an

individual hunter is permitted to import. Pl.'s MSJ at 40–41. But it offers only hypothetical

examples of FWS misconduct that it believes would warrant disclosure. *See, e.g.*, *id.* at 40 ("For

example, *if* FWS allowed multiple unlawful imports into the country, HSI would want to know

whether they were multiple imports by the same person, or rather single imports by many

different importers." (emphasis added)). Although HSI suggests that it "*has* provided sufficient

evidence of government negligence or wrongdoing," Pl.'s Reply at 20, the only evidence it

provides are its own press releases expressing disagreement with FWS's recent decision, after

seeking comment from the public, to grant an importation permit, and two recent cases in which

courts found that FWS had violated the APA in promulgating various rules, *id.* at 21. This

evidence does not credibly suggest that during the relevant period, FWS officials engaged in

misfeasance or failed to meet their statutory enforcement duties—nor does it have much to do

with its purported need for the names of these individuals. HSI therefore has not demonstrated a

public interest in the disclosure of these individuals' names that outweighs the privacy interests

at stake.

Because Defendants have established that individual importers and exporters have a

privacy interest in their names, and HSI has not established a public interest in disclosure

sufficient to outweigh their privacy interest, disclosure of their names "could reasonably be

expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

For these reasons, the Court will grant Defendants' and SCI's motions for summary judgment,

and deny HSI's, as to the withholdings under Exemption 7(C).[6]

### B.     APA Claim

In its APA claim, HSI asserts that FWS unlawfully failed to explain its withholdings.

Compl. ¶¶ 86–92.  HSI argues that for over ten years, FWS "routinely and consistently" released

the information that it has now withheld, and that FWS's change in position demands an

explanation. *Id.* ¶ 92.  It therefore asks the Court to "[d]eclare that Defendants' withholding of

the three categories of LEMIS data must be set aside as arbitrary and capricious under the APA."

*Id.*, Relief ¶ D.

Judicial review under the APA is available only for "final agency action for which there

is no other adequate remedy in a court."  5 U.S.C. § 704.  To determine whether an adequate

remedy exists, the D.C. Circuit evaluates "whether a statute provides an independent cause of

action or an alternative review procedure."  *Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C.

2010) (quoting *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health &

Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)).  Courts in this Circuit need not find that

---

[6] FOIA requires that agencies release any non-exempt portion of a record that is "reasonably
segregable" from the exempt portions.  5 U.S.C. § 552(b).  And courts must consider whether an
agency has met this requirement even where the plaintiff does not argue otherwise. *See Elliott v.
USDA*, 596 F.3d 842, 851 (D.C. Cir. 2010).  Here, because FWS withheld only individuals'
names and there is no indication that it withheld any non-exempt information on the ground that
it was not segregable, the Court is satisfied that the segregability requirement is met as to the
information withheld under Exemption 7(C). *See also PETA*, 901 F.3d at 351 (segregability
requirement was met where agency redacted only exempt categories of data collected through
forms declaring animal imports).

the alternative remedy provides "relief identical to relief under the APA, so long as it offers relief of the same genre." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009).

The APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). For that reason, an APA claim "arising out of an agency's response to a FOIA request must be dismissed when [it] seek[s] relief that can be obtained through a FOIA claim itself." *Elec. Privacy Info. Ctr. v. NSA*, 795 F. Supp. 2d 85, 95 (D.D.C. 2011) (collecting cases). HSI concedes that APA review is unavailable when a plaintiff seeks the disclosure of records because FOIA provides an adequate remedy. Pl.'s MSJ at 43. But HSI argues that its APA claim would not be remedied by the disclosing of records. *Id.* at 44. Rather, it asserts that FWS's inadequate explanation can be remedied "only by a proper acknowledgment and explanation of [FWS's] material reversal of longstanding agency policy." *Id*. HSI thus argues that it does not challenge "the agency policy itself," but instead "the agency's independent failure to acknowledge and explain its decision to change course as required by the APA." *Id.*

HSI's argument misses the mark. In its briefing, HSI attempts to reframe its requested relief under the APA as an explanation for FWS's alleged shift in practice. But as reflected in the complaint, the relief it seeks on its APA claim is not to have the agency explain its action, but to have FWS's withholdings under Exemptions 4, 6, and 7(C) invalidated. *See* Compl., Relief ¶ D (requesting that the Court "[d]eclare that Defendants' withholding of the three categories of LEMIS data must be set aside as arbitrary and capricious under the APA"). And that makes sense, since the available remedy under the APA for arbitrary and capricious action is for the Court to hold the action unlawful, not to require the agency to explain itself. 5 U.S.C. § 706(2)(A) (courts must "hold unlawful and set aside" arbitrary and capricious agency action).

That relief—holding FWS's action unlawful by invalidating its withholdings—is precisely the relief available to HSI under FOIA. FOIA thus precludes HSI's APA claim, and the Court will grant summary judgment for Defendants on this claim.

**IV.      Conclusion and Order**

For all of the above reasons, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 32, is **DENIED WITHOUT PREJUDICE** as to the applicability of Exemption 4, and **GRANTED** as to the applicability of Exemption 7(C) and as to HSI's APA claim; SCI's Motion for Summary Judgment, ECF No. 34, is **GRANTED** as to the applicability of Exemption 7(C); and HSI's Cross-Motion for Summary Judgment, ECF No. 36, is **DENIED WITHOUT PREJUDICE** as to the applicability of Exemption 4 and **DENIED** as to the applicability of Exemption 7(C) and as to its APA claim. It is further **ORDERED** that the parties shall file a proposed briefing schedule for renewed summary judgment motions by September 12, 2019.


                    **SO ORDERED.**


                                                    /s/ Timothy J. Kelly
                                                    TIMOTHY J. KELLY
                                                    United States District Judge

Date: August 15, 2019