**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HUMANE SOCIETY INTERNATIONAL, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| *v.* | ) |
| | )    No. 1:16-cv-00720-TJK |
| U.S. FISH & WILDLIFE SERVICE, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |
| | ) |
| | ) |

**DECLARATION OF CATHY WILLIS**

Pursuant to 28 U.S.C. 1746, I declare and state as follows:

1.      I am the Chief of the Branch of FOIA, Records, and Privacy for the U.S. Fish & Wildlife Service ("FWS"), a bureau of the U.S. Department of the Interior. I assumed this position in March of this year, following the departure of my predecessor, Carrie Hyde-Michaels.

2.      I, along with others, have worked on matters involving this case, *Humane Society Int'l v U.S. Fish & Wildlife Service.* I make this declaration in connection with representations that government has made concerning FOIA Exemption 4, 5 U.S.C. § 552(b)(4), particularly with respect to statements and declarations offered by submitters whose information the FWS is presently withholding from public release on the basis of FOIA Exemption 4.

3.      All information provided in this declaration is based on either (a) my personal knowledge, (b) my discussions with other government employees in connection with the processing of records responsive to the plaintiff's FOIA request of June 2, 2014, August 21, 2014, and June 3, 2015; (c) my review of relevant records; (d) my opinions based on experience, knowledge, and information concerning the FWS's FOIA operations; or (e) a combination of items (a) through (d). As such, the statements contained in this declaration are based upon my personal

1

knowledge, upon information given to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

4.        On June 2, 2014, August 21, 2014, and June 3, 2015, the Humane Society International filed FOIA requests with the FWS, seeking broad categories of information residing in the FWS's law enforcement management information system, popularly known as LEMIS. Detailed information concerning (a) these FOIA requests, (b) the FWS's processing of these requests, (c) the LEMIS database, (d) submitters' originally articulated positions on the assertion of FOIA Exemption 4 to protect their information that resides in the LEMIS database, (e) the FWS's assessment of the submitter's originally articulated Exemption 4 positions, and (f) the reasoning behind the FWS's determination to assert Exemption 4—as well as Exemptions 6 and 7(C), and, in one instance, 7(F)—may be found in the January 25, 2018, declaration of my predecessor, Carrie Hyde-Michaels (hereinafter, the "First Hyde-Michaels Declaration").

5.        On April 18, 2018, Carrie Hyde-Michaels submitted executed a second declaration in connection with this case (hereinafter, the "Second Hyde-Michaels Declaration").  As explained in Paragraph 4 of the Second Hyde-Michaels Declaration, Exhibit A to that declaration provided both (a) an index of 98 statements the FWS received from submitters whom the agency believed to have made persuasive arguments as to why Exemption 4 applied to their information under the test employed under *National Parks & Conservation Assn v. Morton* , 498 F. 2d 765 (D.C. Cir. 1974), to determine whether information is "confidential" for purposes of 5 U.S.C. § 552(b)(4), and (b) copies of those statements.

6.        As explained in Paragraph 5 of the Second Hyde-Michaels Declaration, Exhibit B to that declaration provided an index of 23 additional submissions from submitters with agency-

sustained Exemption 4 objections who chose to provide further elaboration as to why Exemption 4 should apply to them, together with copies of the submissions.

7.    The FWS is of the belief that those submitters who, in the estimation of the agency, met the *National Parks & Conservation Ass'n* standard for establishing that they provided the government with "trade secrets and commercial or financial information obtained from a person and privileged or confidential" such that the submitted information qualified for the application of FOIA Exemption 4 also, by definition, meet the criteria for "trade secrets and commercial or financial information obtained from a person and privileged or confidential" under the Exemption 4 test for "confidentiality" expressed by the Supreme Court in *Food Marketing Institute v. Argus Leader*, 588 U.S. __, 139 S.Ct. 1471 (2019).

8.    This is because the agency has, from the outset, required that the submitters for whom it is presently asserting FOIA Exemption 4 to vouch to the FWS that "the information is confidential, that [the submitter has] not disclosed the information to the public, and that the information is not routinely available to the public from other sources." *See* 81 Fed. Reg. 75838, 75839 (Nov. 1, 2016) ("[I]f you object to the public disclosure of the records (or any portions of records) at issue in *Humane Society v. U.S. FWS*, No. 16-720 (D.D.C., filed Apr. 18, 2016), on the basis that the information submitted is protected by FOIA Exemption 4, then the regulations require [a] 'detailed written statement' ... to include a 'specific and detailed discussion' of the following: … Certification that the information is confidential, that you have not disclosed the information to the public, and that the information is not routinely available to the public from other sources."). A copy of the referenced November 1, 2016, Federal Register notice is attached here as Exhibit A to the declaration.

3

9. Subsequent to Judge Timothy J. Kelly's Memorandum and Order dated August 15, 2019, the FWS contacted submitters whose information the agency believes protected from public disclosure under FOIA Exemption 4. In its communication, the agency explained the current posture of the case and invited the submitter to expressly certify that the information at issue is confidential because it is both customarily and actually treated as private by its owner, that the owner had not disclosed the information to the public, and that the information is not routinely available to the public through other sources. An example of the referenced communication is attached here as Exhibit B to the declaration. As of the date of this declaration, the FWS has received 27 statements in response. The statements are either from submitters, their attorneys, or, in some cases, both.  An index of the statements is attached here as Exhibit C to the declaration. Copies of the statements are attached here as Exhibit D to the declaration.

9. The FWS is of the belief that the assurances of "confidential" treatment regarding the information at issue proffered by those for whom the agency is presently withholding information on the basis of FOIA Exemption 4 align with the concept of "confidentiality" expressed by the Supreme Court in *Food Marketing Institute*. Here, the agency had, prior to the Supreme Court's decision in *Food Marketing* Institute, received assurances from the submitters of the information at issue "that the information is confidential, that [the submitters at issue] have not disclosed the information to the public, and that the information is not routinely available to the public from other sources." Such assurances are, in the eyes of the FWS, in alignment with the Supreme Court having treated as "confidential" for purposes of FOIA Exemption 4 "commercial or financial information [that] is both customarily and actually treated as private by its owner." *See Food Marketing Institute*, 588 U.S. __, 139 S.Ct. at 2366. Thereafter, the statements FWS received from submitters who were contacted by the agency following Judge Timothy J. Kelly's

August 15, 2019, Memorandum and Order expressly explaining that the submitters maintained their information's "confidentiality" in a manner that aligns with the *Food Marketing Institute* stance on confidentiality.

10.    The FWS is aware that the Supreme Court's ruling in *Food Marketing Institute* concerned a fact pattern, i.e., Supplemental Nutrition Assistance Program redemption data concerning individual grocery retailers, in which the information at issue was "both customarily and actually treated as private by its owner *and* provided to the government under an assurance of privacy." *Id*. Prior to the decision in *Food Marketing Institute*, the FWS would not have thought that it would have had the latitude to "provide[ ] … an assurance of privacy" to the submitters of the LEMIS data at issue here, because the agency would have advised submitters that any submissions would be subject to federal disclosure law, and, at the relevant time, the submission of information at issue would have been subject to the "confidentiality" test set forth in *National Parks & Conservation Assn v. Morton* , 498 F. 2d 765 (D.C. Cir. 1974).

DATED: October 9, 2019

_____
CATHY WILLIS