Declaration of Cathy Willis

Exhibit A

estimate time and cost for implementing recovery measures.

The Act requires the development of recovery plans for listed species, unless such a plan would not promote the conservation of a particular species. Section 4(f) of the Act requires us to provide public notice and an opportunity for public review and comment during recovery plan development. We will consider all information presented during a public comment period prior to approval of each new or revised recovery plan. We and other Federal agencies will take these comments into account in the course of implementing approved recovery plans.

**Recovery Plan Components**

The recovery objectives are to work to reduce threats in order to downlist the chucky madtom to threatened status. Defining reasonable delisting criteria is not possible at this time given the current low number of individuals, extreme curtailment of the species' range, extensive modification and fragment of habitat with the species' historical range, lack of information about the species' biology, and magnitude of other existing threats. Therefore, this recovery plan establishes only downlisting criteria for this catfish. Criteria will be reevaluated as new information becomes available.

*Downlisting of chucky madtom will be considered when:*

1. Suitable instream and riparian habitat, flows, and water quality for chucky madtom as defined by the best available science (to be refined by recovery actions), exist in occupied streams (addresses Factor A).

2. Population studies show that a viable chucky madtom population in Little Chucky Creek and at least 1 other stream (Dunn Creek, Jackson Branch; *e.g.,* the only known stream representing the historical range of the species) are naturally recruiting (consisting of two year classes in the fall months) and sustainable over a period of 20–30 years (10 generations) (addresses Factors A, C, and E).

**Request for Public Comments**

We request written comments on the draft recovery plan. We will consider all comments we receive by the date specified in DATES prior to final approval of the plan.

**Public Availability of Comments**

Before including your address, phone number, email address, or other personal identifying information in your comment, you should be aware that your entire comment—including your personal identifying information—may be made publicly available at any time. While you can ask us in your comment to withhold your personal identifying information from public review, we cannot guarantee that we will be able to do so.

**Authority**

The authority for this action is section 4(f) of the Endangered Species Act, 16 U.S.C. 1533(f).

Dated: September 6, 2016.

**Mike Oetker,**

*Acting Regional Director, Southeast Region.*

[FR Doc. 2016–26330 Filed 10–31–16; 8:45 am]

BILLING CODE 4310-55-P

---

**DEPARTMENT OF THE INTERIOR**

**Fish and Wildlife Service**

**[FWS–HQ–LE–2016–N155; FF09L00200–FX–LE18110900000]**

**Freedom of Information Act; Notice of Lawsuit**

**AGENCY:** Fish and Wildlife Service, Interior.

**ACTION:** Notice; request for comments.

**SUMMARY:** The U.S. Fish and Wildlife Service seeks information about potential objections to the public release of possibly confidential information regarding import and export activities tracked via the Service's Law Enforcement Management Information System. We issue this notice and solicit this information in response to a lawsuit under the Freedom of Information Act.

**DATES:** You must submit comments on or before November 22, 2016.

**ADDRESSES:** You may submit comments by one of the following methods:
- *Email: lawenforcement@fws.gov.*
- *Fax:* (703) 358–2271.
- *U.S. mail or hand-delivery:* U.S. Fish and Wildlife Service, Office of Law Enforcement (FOIA), 5275 Leesburg Pike (MS: OLE), Falls Church, VA 22041.

**FOR FURTHER INFORMATION CONTACT:** Michael Jenkins, Management Analyst Specialist, USFWS, Office of Law Enforcement, 5275 Leesburg Pike, Falls Church, VA 22041; telephone (703) 358–1949.

**SUPPLEMENTARY INFORMATION:** This notice is issued under part 2 of title 43 of the Code of Federal Regulations (CFR), which sets forth regulations for administration of the Freedom of Information Act (FOIA) by the U.S. Department of the Interior ("the Department").

We, the U.S. Fish and Wildlife Service ("the Service"), hereby announce that information related to records for the import and export of all wildlife specimens to and from the United States may be disclosed under FOIA (43 CFR 2.27(b)).

Submitters of this type of information can contact the Service to review records subject to possible release. If you are a submitter of this information, the Service will presume that you do not object to the disclosure of your information if a response to this notice is not received by the date specified above in DATES.

**I. Background**

The Department is soliciting views from submitters with respect to whether certain records constitute "trade secrets and commercial or financial information obtained from a person [that are] privileged or confidential" information under the FOIA, 5 U.S.C. 552(b)(4). The records at issue concern information in the Service's Law Enforcement Management Information System (LEMIS) relating to the import and export of all wildlife specimens to and from the United States:

a. For the years 2002 through 2010, 2013, and 2014;

b. of any taxonomic class, whether live, dead, parts, or products; and

c. with the following variables to be included in the records: Control Number, Species Code, Class, Genus, Species, Subspecies, Generic Name, Specific Name, Wildlife Description, Quantity, Unit, Value, Country of Origin, Country Import/Export, Purpose, Source, Act, Disposition Code, Disposition Date, Shipment Date, Import/Export, Port Code, U.S. Importer/Exporter, and Foreign Importer/Exporter.

This notice relates to FOIA requests by Humane Society International (HSI) of June 2, 2014; August 21, 2014; June 3, 2015; and November 3, 2015. In response to these FOIA requests, the Service withheld the "Declared Value of Wildlife" and "Foreign Importer/Exporter" columns in their entirety under FOIA Exemption 4. The Service withheld additional information under Exemptions 6 and 7(C). The Service's response to these FOIA requests is now the subject of a lawsuit, *Humane Society Int'l v. U.S. FWS,* No. 16–720 (D.D.C., filed Apr. 18, 2016). A copy of HSI's three FOIA requests, as well as the complaint filed in the United States District Court for the District of Columbia, has been posted on: *https://www.fws.gov/le/businesses.html#FOIAMatters.* Upon request, the Service will provide

submitters the relevant submitter information that the Service found to be responsive to HSI's requests.

## II. Issues for Comment

The Department has been asked to release certain information in LEMIS for the years 2002 through 2010, 2013, and 2014 relating to the import and export of all wildlife specimens to and from the United States. This notice provides you with the opportunity to object to the public release of these records if they are exempt from disclosure under FOIA, 5 U.S.C. 552(b). Please reference *Humane Society Int'l* v. *U.S. FWS*, No. 16–720, in any communications regarding this matter.

If you wish to object to the disclosure of these records, the Department's FOIA regulations ("regulations") require you to submit a "detailed written statement" setting forth the justification for withholding any portion of the information under any exemption of the FOIA. *See* 43 CFR 2.30.

Under FOIA's Exemption 4, 5 U.S.C. 552(b)(4), "trade secrets and commercial or financial information obtained from a person and privileged or confidential" are exempt from disclosure under the FOIA. When the Department has reason to believe that information that is responsive to a FOIA request may be exempt from disclosure under FOIA's Exemption 4, the regulations require the Department to provide notice to the submitter(s) of the responsive material and advise the submitter(s) of the procedures for objecting to the release of the requested material. This publication serves as notice.

Further, if you object to the public release of the records (or any portions of records) at issue in *Humane Society* v. *U.S. FWS*, No. 16–720 (D.D.C., filed Apr. 18, 2016), on the basis that the information submitted is protected by FOIA Exemption 4, then the regulations require the "detailed written statement" referenced above to include a "specific and detailed discussion" of the following:

(i) Whether the Government required the information to be submitted and, if so, how substantial competitive or other business harm would likely result from release; or

(ii) Whether you provided the information voluntarily and, if so, how the information in question fits into a category of information that you customarily do not release to the public.

(iii) Certification that the information is confidential, that you have not disclosed the information to the public, and that the information is not routinely available to the public from other sources.

In order for information to qualify for protection under Exemption 4 as a "trade secret," the information must be "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *See Public Citizen Health Research Group* v. *FDA*, 704 F.2d 1280, 1288 (D.C. Cir. 1983). This definition requires there be a direct relationship between the information at issue and the productive process. *Id.* Should you wish to object to the disclosure of any of the information in the documents on the basis that such information is a trade secret, the specific and detailed discussion must explain how *each category* of information is related to qualify for protection under Exemption 4 as a "trade secret." The explanation must also identify a direct relationship between the information and the productive process.

In order for information to qualify for protection under the aspect of Exemption 4 that protects privileged or confidential commercial or financial information, the first requirement is that the information must be either "commercial or financial." In determining whether documents are "commercial or financial," the D.C. Circuit has firmly held that these terms should be given their "ordinary meanings" and that records are commercial so long as you have "commercial interest" in them. *See Public Citizen,* 704 F.2d at 1290 (citing *Washington Post Co.* v. *HHS,* 690 F.2d 252, 266 (D.C. Cir. 1982), and *Board of Trade* v. *Commodity Futures Trading Comm'n,* 627 F.2d 392, 403 (D.C. Cir. 1980)); *see also Nat'l Ass'n of Home Builders* v. *Norton,* 309 F.3d 26, 38 (D.C. Cir. 2002) (stating "information is 'commercial' under [Exemption 4] if, 'in and of itself,' it serves a 'commercial function' or is of a 'commercial nature.' ").

The specific and detailed discussion that you provide must explain how the information relates to your commercial interest and the commercial function the information serves or the commercial nature of the information.

The test to determine if information is "privileged" or "confidential" under Exemption 4 depends on whether the submitter was required to provide the information to the Government or whether the submitter voluntarily disclosed the information to the Government. *Bartholdi Cable. Co.* v. *FCC,* 114 F.3d 274, 281 (D.C. Cir. 1997). Where you voluntarily provide

information to the Government, the information will be considered confidential for the purposes of Exemption 4 "if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Id.* (citing *Critical Mass Energy Project* v. *Nuclear Regulatory Commission,* 975 F.2d 871, 879 (D.C. Cir. 1992) (*en banc*)). Alternatively, where the Government requires you to provide information (as is the case for the information at hand), then commercial or financial information generally is "confidential" under Exemption 4 "if disclosure . . . is likely to have either of the following effects: (1) impair the Government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom it was obtained." *National Parks and Conservation Assoc.* v. *Morton,* 498 F.2d 765, 770 (D.C. Cir. 1974). A showing of substantial competitive harm is necessary only where the information in question is required to be submitted to the Government.

You must explain whether you voluntarily provided the information in question or whether the Government required the information to be submitted. Should you assert that you voluntarily submitted the information, you must also explain how the information in question fits into a category of information that you customarily do not release to the public. If you assert that the Government required you to submit the information in question (as is the case for the information at hand), then you must explain how substantial competitive or other business harm would likely result from release.

To demonstrate that disclosure is likely to cause substantial competitive harm, there must be evidence that: (1) You face actual competition; and (2) substantial competitive injury would likely result from disclosure. *See Lions Raisins* v. *USDA,* 354 F.3d 1072, 1079 (9th Cir. 2004); *Inner City Press/ Community on the Move* v. *Federal Reserve System,* 380 F. Supp. 2d 211, 220 (S.D.N.Y. 2005); *People for the Ethical Treatment of Animals* v. *USDA,* 2005 U.S. Dist. LEXIS 10586, at 15 (D.D.C. May 24, 2005); *National Parks & Conservation Association* v. *Kleppe,* 547 F.2d 673, 679 (D.C. Cir. 1976) ("*National Parks II*").

In order for the Department to fully evaluate whether you are likely to suffer substantial competitive injury from disclosure of the withheld information, any objections on this basis must include a detailed explanation of who

**75840**   **Federal Register** / Vol. 81, No. 211 / Tuesday, November 1, 2016 / Notices

your competitors are and the nature of the competition. You must also explain with specificity how disclosure of *each category* of information that you object to disclosing on this basis would provide your competitors with valuable insights into your operation, give competitors pricing advantages over you, or unfairly give advantage to competitors in future business negotiations, or any other information that sufficiently explains the substantial competitive injury that would likely result from disclosure. *National Parks II,* 547 F.2d at 684; *Center for Public Integrity v. Dep't of Energy,* 191 F. Supp. 2d 187, 194 (D.D.C. 2002); *Judicial Watch, Inc. v. Export-Import Bank,* 108 F. Supp. 2d 19, 29 (D.D.C. 2000).

Additionally, as noted above, you must also certify that any information you object to disclosing is confidential, you have not disclosed the information to the public, and the information is not routinely available to the public from other sources. *See* 43 CFR 2.30–2.31.

As a final matter, please be aware that the FOIA requires that "any reasonably segregable portion of a record" must be released after appropriate application of the FOIA's nine exemptions. *See* 5 U.S.C. 552(b) (discussion after exemptions). In addition, please note that, where a record contains both exempt and nonexempt material, the bureau will generally separate and release the nonexempt information when responding to a FOIA request. 43 CFR 2.25. You should be mindful of this segregability requirement in formulating any objections you may have to the disclosure of the information sought by HSI.

### III. Submission of Objections

Should you wish to object to disclosure of any of the requested records (or portions thereof), the Department must receive from you all of the information requested above by no later than the date specified above in **DATES**.

If you do not submit any objections to the disclosure of the information (or portions thereof) to HSI on or before the date specified above in **DATES**, the Department will presume that you do not object to such disclosure and may release the information without redaction. Please note that the Department, not you, is responsible for deciding whether the information should be released or withheld. If we decide to release records over your objections, we will inform you at least 10 business days in advance of the intended release.

Please note that any comments you submit to the Department objecting to

the disclosure of the documents may be subject to disclosure under the FOIA if the Department receives a FOIA request for them. In the event your comments contain commercial or financial information and a requester asks for the comments under the FOIA, the Department will notify you and give you an opportunity to comment on the disclosure of such information.

Dated: October 27, 2016.

**Stephen Guestin,**

*Acting Director, U.S. Fish and Wildlife Service.*

[FR Doc. 2016–26412 Filed 10–31–16; 8:45 am]

**BILLING CODE 4333–15–P**

### DEPARTMENT OF THE INTERIOR

[FWS–R4–FHC–2016–N176; FVHC98220410150–XXX–FF04G01000]

**Deepwater Horizon Oil Spill; Louisiana Trustee Implementation Group Draft Restoration Plan #1: Restoration of Wetlands, Coastal, and Nearshore Habitats; Habitat Projects on Federally Managed Lands; and Birds**

**AGENCY:** Department of the Interior.

**ACTION:** Notice of availability; request for comments.

**SUMMARY:** In accordance with the Oil Pollution Act of 1990 (OPA), the National Environmental Policy Act (NEPA), the Consent Decree, and the Final Programmatic Damage Assessment Restoration Plan and Final Programmatic Environmental Impact Statement (Final PDARP/PEIS), the Federal and State natural resource trustee agencies for the Louisiana Trustee Implementation Group (Trustees) have prepared a Draft Restoration Plan #1: Restoration of Wetlands, Coastal, and Nearshore Habitats; Habitat Projects on Federally Managed Lands; and Birds (Draft Restoration Plan 1) describing and proposing engineering and design activities for restoration projects intended to continue the process of restoring natural resources and services injured or lost as a result of the *Deepwater Horizon* oil spill, which occurred on or about April 20, 2010, in the Gulf of Mexico.

**DATES:** *Comments Due Date:* We will consider public comments received on or before November 28, 2016.

*Public Meeting:* If requested, the Trustees will schedule a public meeting to facilitate public review and comment process on the draft document.

**ADDRESSES:** *Obtaining Documents:* You may download the Louisiana Trustee Implementation Group Draft Restoration

Plan 1: Restoration of Wetlands, Coastal, and Nearshore Habitats, Habitat Projects on Federally Managed Lands, and Birds draft restoration plan at any of the following sites:

● *http://www.gulfspillrestoration. noaa.gov*
● *http://www.doi.gov/deepwaterhorizon*
● *http://www.la-dwh.com*

Alternatively, you may request a CD of the Draft Restoration Plan 1 (see **FOR FURTHER INFORMATION CONTACT**). You may also view the document at any of the public facilities listed at *http:// www.gulfspillrestoration.noaa.gov.*

*Submitting Comments:* You may submit comments on the draft document by one of following methods:

● *Via the Web: http:// www.gulfspillrestoration.noaa.gov/ restoration-areas/louisiana.*
● *Via U.S. Mail:* U.S. Fish and Wildlife Service, P.O. Box 49567, Atlanta, GA 30345.
● Louisiana Coastal Protection & Restoration Authority, ATTN: Liz Williams, P.O. Box 44027, Baton Rouge, LA 70804.

**FOR FURTHER INFORMATION CONTACT:** Liz Williams at *LATIG@la.gov.*

**SUPPLEMENTARY INFORMATION:**

### Introduction

On or about April 20, 2010, the mobile offshore drilling unit *Deepwater Horizon,* which was being used to drill a well for BP Exploration and Production, Inc. (BP), in the Macondo prospect (Mississippi Canyon 252– MC252), experienced a significant explosion, fire, and subsequent sinking in the Gulf of Mexico, resulting in an unprecedented volume of oil and other discharges from the rig and from the wellhead on the seabed. The *Deepwater Horizon* oil spill is the largest oil spill in U.S. history, discharging millions of barrels of oil over a period of 87 days. In addition, well over 1 million gallons of dispersants were applied to the waters of the spill area in an attempt to disperse the spilled oil. An undetermined amount of natural gas was also released into the environment as a result of the spill.

The *Deepwater Horizon* State and Federal natural resource trustees (Trustees) conducted the natural resource damage assessment (NRDA) for the *Deepwater Horizon* oil spill under the Oil Pollution Act 1990 (OPA; 33 U.S.C. 2701 *et seq.*). Pursuant to OPA, Federal and State agencies act as trustees on behalf of the public to assess natural resource injuries and losses and to determine the actions required to compensate the public for those injuries and losses. OPA further instructs the

Declaration of Cathy Willis

Exhibit B



## United States Department of the Interior

### FISH AND WILDLIFE SERVICE

Office of Law Enforcement
5275 Leesburg Pike (MS-OLE)
Falls Church, VA 22041-3803



In Reply Refer To:
Federal Register Notice 81 Fed
Reg. 75838 (Nov. 1, 2016)

SEP - 6 2019

Valley Biosystems
Attn: Stephen Cello
1265 Triangle Ct.
West Sacramento, CA 95605
s.cello@valleybiosystems.com

Dear Mr. Cello:

<u>Re: Ongoing Litigation Involving Records Submitted to the Federal Government</u>

We are contacting you again concerning Freedom of Information Act (FOIA) requests that the Humane Society International (HSI) submitted to the U.S. Fish & Wildlife Service (Service) in calendar years 2014 and 2015. As you may recall, the requests concerned data in the Service's Law Enforcement Management Information System (LEMIS) relating to the import and export of all wildlife specimens to and from the United States for the years 2002 through 2010, 2013, and 2014. The manner in which the Service responded to the FOIA requests led to a FOIA lawsuit against the Service—*Humane Society Int'l v. U.S. Fish & Wildlife Serv.*, No. 16-720 (D.D.C., filed Apr. 18, 2016)—with HSI alleging that the Service had improperly withheld certain categories of LEMIS information from public disclosure on the basis of FOIA Exemption 4, 6, and 7(C).

As you may know, FOIA Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). FOIA Exemption 6, meanwhile, protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* at § 552(b)(6). As for Exemption 7(C), it protects "records or information compiled for law enforcement purposes" to the extent such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* at § 552(b)(7)(C).

On August 15, 2019, the United States District Court for the District of Columbia ruled that the Service had not improperly withheld information under either Exemption 6 or Exemption 7(C). As for FOIA Exemption 4, the District Court determined that it could not yet render a decision on Exemption 4 based on the record before it and directed the parties to provide additional arguments

as to why Exemption 4 does or does not apply in light of a recent Supreme Court decision, *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019). In *Food Marketing Institute*, the Supreme Court held that confidentiality under Exemption 4 does not depend on whether disclosure of the information would cause substantial competitive harm but on whether the entity sharing the information typically kept it private.

We are therefore turning to you once more, this time to seek your views on whether your LEMIS data appearing in the columns for "Species Code, Genus, Species, Subspecies, Specific Name, Generic Name, Quantity, Declared Value of Wildlife, and Foreign Importer/Exporter" should be treated as "confidential" within the meaning of that term as used in *Food Marketing Institute*. To that end, we invite a declaration from Valley Biosystems. certifying the following points (if true):

> 1. that the information at issue is both customarily and actually treated as private by its owner,
> 2. that the information is therefore confidential,
> 3. that Valley Biosystems. has not disclosed the information to the public, and
> 4. that the information is not routinely available to the public from other sources.

If you opt to provide a declaration, the Service asks that it be submitted to it no later than 10 workdays from receipt of this communication. You may submit the declaration to the agency by one of the following methods:

> ole_foia_submitter_notice@fws.gov
> Fax: (703) 358-2271
> U.S. mail or hand-delivery: U.S. Fish and Wildlife Service, Office of Law Enforcement (FOIA), 5275 Leesburg Pike (MS: OLE), Falls Church, VA 22041

Please ensure that the submission is clearly marked as "DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA LAWSUIT."

Should you have concerns about this matter, please contact Michael Jenkins or Kenneth Perry at 703-358-1949.

And should you wish to read the District Court' August 15, 2019, decision, it is available at
https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2016cv0720-47.

Sincerely,

Cathy Willis
FWS FOIA Office

Declaration of Cathy Willis

Exhibit C

**Index of Statements the Fish & Wildlife Service received from submitters following the decision in *Food Marketing Institute v. Argus Leader*, 588 U.S. __, 139 S.Ct. 1471 (2019)**

- September 6, 2019, 11:56:09 AM, from Holly A. Hunt of International Animal Exchange.
- September 6, 2019, 11:59:47 AM, from Holly A. Hunt of International Animal Exchange.
- September 9, 2019, from Stephen Cello of Valley Biosystems.
- September 10, 2019, from Dena Woodson of Woods & Water Taxidermy.
- September 11, 2019, from Greg Schieber, attorney for Wiebke Fur Co.
- September 11, 2019, from Joe Shilkus of Apet, Inc.
- September 11, 2019, from Ivana Stojadinov of Animal Source Texas, Inc.
- September 12, 2019, from Leonard Gorski of Gorski Group, Ltd.
- September 12, 2019, from Winifred Luty of BioIVT, LLC.
- September 13, 2019, from Kamuran Tepedelen of Bushmaster Reptiles, Inc.
- September 14, 2019, from Marvin Yarrow of The Newmount Group.
- September 16, 2019, from Howard Noseworthy of Fur Harvesters Auction, Inc.
- September 16, 2019, from Laura Reid of Fish Mart, Inc.
- September 18, 2019, from Sandra Moore of Segrest Farms, Inc.
- September 18, 2019, from D. Raghav Shan, attorney for Oregon Health and Science University.
- September 19, 2019, from John Mack of Reptiles by Mack, LLC.
- September 19, 2019, from James Peterson of PM Wildlife Studios, Inc, d/b/a Brush Country Studios.
- September 19, 2019, from James Peterson of Prairie Mountain Wildlife Studios, LLC.
- September 19, 2019, from Joel Rakower of Transship Discounts, Ltd.
- September 19, 2019, from Barry Wisebram of Sun Pet, Ltd.
- September 20, 2019, from Robert Vitro of Safari Specialist, Inc., d/b/a True-Life Taxidermy.
- September 26, 2019, from Ira Block of Worldwide Primates, Inc.
- September 26, 2019, from William M. Krulak, Jr., attorney for Worldwide Primates, Inc.
- September 26, 2019, from Paul W. Barras of Primate Products.
- September 26, 2019, from William M. Krulak, Jr., attorney for Primate Products.
- September 26, 2019, from Larry Fudem of Fourrures Wolfie Furs, Inc., complete with an Exhibit A of its own.
- Undated, from Lea Jaunakais of Tiger World, Inc., d/b/a Tiger World Endangered Wildlife Preserve.

# Declaration of Cathy Willis

## Exhibit D

- September 6, 2019, 11:56:09 AM, from Holly A. Hunt of International Animal Exchange.

**From:** holly.internationalanimalexchange.com
**To:** Michael_Jenkins@fws.gov; Kenneth_Perry@fws.gov
**Subject:** [EXTERNAL] FW: Objection exemption under FOIA, 5 U.S.C. 552(b)
**Date:** Friday, September 6, 2019 11:56:09 AM

---

**From:** Holly <holly@internationalanimalexchange.com>
**Sent:** Thursday, November 17, 2016 3:44 PM
**To:** Michael_Jenkins@fws.gov; Kenneth_Perry@fws.gov
**Cc:** laebrian@aol.com
**Subject:** Objection exemption under FOIA, 5 U.S.C. 552(b)

**Dear Michael and Kenneth:**
**We are respectfully writing to you about:**

> **Federal Notice - Freedom of Information Act Lawsuit**
> **HSI Law suit/Complaint**
> **HSI FOIA Request #1**
> **HSI FOIA Request #2**
> **HSI FOIA Request #3**

**International Animal Exchange ("IAE")  objects to the public release of FWS records containing information provided by IAE to the Government.  This objection is based upon exemption from disclosure under FOIA, 5 U.S.C. 552(b) or other relevant statutory provisions.**

**The objected-to information includes commercial or financial information including the Declared Value of Wildlife, Port of Import/Export  and Importer/Exporter information (both U.S. and Foreign), and in addition the following commercial information:  "Species Code, Class, Genus, Species, Subspecies, Generic Name, Specific Name, Wildlife Description"**

**IAE Inc. certifies that the objected-to information is confidential, has not been disclosed to the public, and is not routinely available to the public from other sources.**

**REQUEST For Relevant Submitter Information**

**As provided by the FR Notice, IAE  requests the relevant submitter information that the Service found to responsive to HSI's requests.**

**Our company International Animal Exchange, Inc., has been providing Conservation Logistics Services to Zoo's around the world for more than 56 years.  In the past 56 years, we have developed ``a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." By releasing Information about Declared Value of Wildlife and Foreign Importer Exporter would cause our business immense harm, because our competitors**

could gain access to our trade secrets, client lists, and declared value.
In addition, as we have a commercial interest as this information, therefore is considered "commercial", and therefore should be exempt.
We provided  this information as <u>required</u> by the government, and this information would not customarily be released to the public.  We did not voluntarily provide this confidential information.
By releasing this information, it would cause substantial harm to our competitive position.  We have a small number of competitors  (known and unknown) that actively attempt to gain trade secrets, confidential information.
By disclosing each category of information  you would provide our competitors with value insights to our operation, give competitors pricing advantages over us, or unfairly give advantage our  competitors in future business negotiations.
Disclosing this information would cause  substantial competitive injury.
None of the information contained in the FWS records would be routinely available to the public from any other sources.  As a final note, we will not list our known or unknown competitors here, as this is also confidential information.
Again, we are objecting to the disclosure of this information,  under Exemption 4, and are requesting that all information regarding our Permit Activity "Declared Value of Wildlife", "Foreign  Importer/Exporter,"  and "Port of Export" covered in the Lawsuit and FOIA requests below be withheld because releasing this information could harm our business, provides confidential business information to our competitors, gives trade secrets away, provides customer lists, and all of this information is privileged and confidential and would be harmful to our business.
Thank you,

**Holly Hunt**


Holly A. Hunt
President
International Animal Exchange, Inc.
25600 Woodward Avenue
Suite 110
Royal Oak, MI 48067
USA
Phone 248 398 6533 Extension 4
Fax    248 545 4125
Mobile  248 705 0939

internationalanimalexchange.com

Offered is subject to prior sale and any special government permits required.
The offer for sale of endangered species is contingent upon the receipt by the purchasing institution (or the selling institution in the case of exportation of endangered species) of a U.S. Fish and Wildlife Permit. The information contained in this email communication is intended only for the personal and confidential use of the designated recipient named above.  This message may be an Attorney-Client communication, and as such is privileged and confidential.  If the reader of the of this message is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review,

dissemination, distribution, or copying of the message is strictly prohibited.  If you have received this transmission in error, please destroy this transmission and notify us immediately by telephone and or reply email.

- September 6, 2019, 11:59:47 AM, from Holly A. Hunt of International Animal Exchange.

| | |
|---|---|
| **From:** | holly internationalanimalexchange.com |
| **To:** | Kenneth_Perry@fws.gov |
| **Cc:** | ole_foia_submitter_notice@fws.gov; Michael_Jenkins@fws.gov; Kenneth_Perry@fws.gov |
| **Subject:** | [EXTERNAL] DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA LAWSUIT." |
| **Date:** | Friday, September 6, 2019 11:59:47 AM |

Dear Sirs:

Please refer also to our previous objection dated November 17, 2016

International Animal Exchange, **again objects** to our LEMIS Data appearing in the columns for "Species Code, Genus, Species, Subspecies, Specific Name, Generic Name, Wildlife Description, Declared Value of Wildlife, Port Code, U.S. Importer/Exporter and Foreign Importer/Exporter" should be treated as "confidential" within the meaning of that term as used in *Food Marketing Institute* Case.

We Certify the following points:

 1. that the information at issue is both customarily and actually treated as private by its owner,
 2. that the information is therefore confidential,
 3. that International Animal Exchange Inc. has not disclosed the information to the public, and
 4. that the information is not routinely available to the public from other sources.

We are submitting this 2 ways:

 ole_foia_submitter_notice@fws.gov
 Fax: (703) 358-2271

Please ensure that the submission is clearly marked as "DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA LAWSUIT."


Regards,

Holly Hunt


Holly A. Hunt
International Animal Exchange, Inc.
25600 Woodward Avenue
Suite 110
Royal Oak, MI 48067

USA
Phone 248 398 6533 Extension 4
Fax    248 545 4125
Mobile  248 705 0939

internationalanimalexchange.com

Offered is subject to prior sale and any special government permits required.
The offer for sale of endangered species is contingent upon the receipt by the purchasing institution
(or the selling institution in the case of exportation of endangered species) of a U.S. Fish and Wildlife
Permit. The information contained in this email communication is intended only for the personal and
confidential use of the designated recipient named above.  This message may be an Attorney-Client
communication, and as such is privileged and confidential.  If the reader of the of this message is not
the intended recipient, you are hereby notified that you have received this communication in error,
and that any review, dissemination, distribution, or copying of the message is strictly prohibited.  If
you have received this transmission in error, please destroy this transmission and notify us
immediately by telephone and or reply email.

- September 9, 2019, from Stephen Cello of Valley Biosystems.



Kenneth Perry
U.S. Fish and Wildlife Service
Office of Law Enforcement
5275 Leesburg Pike
Falls Church, Virginia 22041

09-Sep-2019

**Re: Federal Register Notice 81 Fed**
    **Reg. 75838 (Nov. 1, 2016)**
    **Ongoing Litigation Involving Records Submitted to the Federal Government**

Dear Mr. Perry,

We received the letter regarding the *Ongoing Litigation Involving Records Submitted to the Federal Government*. As described in your letter received 06-Sep 2019, the issue in question is whether Valley Biosystems meets the following four points:

1. that the information at issue is both customarily and actually treated as private by its owner,

2. that the information is therefore confidential,

3. that Valley Biosystems has not disclosed the information to the public, and

4. that the information is not routinely available to the public from other sources.

**I hereby certify that Valley Biosystems meets each of the four points outlined above.**

We again respectfully request that all information submitted on USF&W form 3-177 pertaining to the importation of nonhuman primates by Valley Biosystems (VBS) be excluded or redacted based on FOIA Exemption 4 which we have previously described, and which is additionally supported by the points above.

Thank you for your attention to this request.

Respectfully,

Stephen Cello
Director of Animal Program and Facilities
Valley Biosystems

- September 10, 2019, from Dena Woodson of Woods & Water Taxidermy.



OLE FOIA Submitter Notice, FWHQ <ole_foia_submitter_notice@fws.gov>

# [EXTERNAL] DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA LAWSUIT

1 message

**Woods & Water Taxidermy** <skullmnt@aol.com>                                                    Tue, Sep 10, 2019 at 5:35 PM
To: ole_foia_submitter_notice@fws.gov

To whom it may concern:

Regarding: FOIA Exemption 4

Woods & Water Taxidermy view on the LEMIS Data appearing in the columns for Quantity, Declared Value of Wildlife, Country of Origin, Country Import/Export, US Importer/Export and Foreign Importer/Exporter Should be Confidential. That information issued is both customarily and actually should be private to its owners.

Woods & Water Taxidermy has not disclosed the information to the public and should not be for other sources for the public.

THANKS, DENA WOODSON

## Woods & Water Taxidermy
11565 Clark Lane
Conroe, TX 77385
281/296-9458 Ext.1

***Follow us on Instagram:***
*https://www.instagram.com/woodsandwatertaxidermy/*

***Like us on our Facebook page:***
*https://www.facebook.com/woodswatertaxidermy/*

- September 11, 2019, from Greg Schieber, attorney for Wiebke Fur Co.

# NETHERCUT ▪ SCHIEBER ▪ ATTORNEYS PA

32 Main Avenue North | PO Box 657 | Harmony, Minnesota 55939-0657
507.886.6131 | NethercutLaw.com | 866.576.3826 Fax

September 11, 2019

U.S. Fish & Wildlife Service
Office of Law Enforcement
5275 Leesburg Pike, MS: OLE
Falls Church, VA 22041

**RE: DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA LAWSUIT**

Dear Sir/Madam:

This is a follow up letter in response to the US District Court requesting additional arguments as to why Exemption 4 applies to protect data in the LEMIS system.

Wiebke Fur Co., Inc., whom I represent, affirms that the information reported to the federal government concerning the types of furs purchased and other associated data (species code, class, genus, species, subspecies, generic name, specific name, quantity, unit, value, country of origin, country of import/export, etc. . .) is information that the owners of the business treat as private information. It is information that is customarily and actually treated as private by the owners.

Wiebke Fur is a small business with two owners. Only the owners are privy to the data listed above and they have not released that information to the public and never intend to release that information to the public. They are fearful of their competitors getting the information and causing them competitive harm. Furthermore, the public would not have access to information surrounding their import/export practices from any other source other than the owners themselves.

We hope this information is helpful. If you need anything further, please let us know.

Sincerely,

Greg Schieber

CC    Jason Wiebke, Wiebke Fur Co., Inc.

---

ATTORNEYS:
GREGORY M. SCHIEBER* | greg@ranlaw.net
RICHARD A. NETHERCUT | Of Counsel

LEGAL ASSISTANT:
NANCY JOHNSON | nancy@ranlaw.net
*also licensed in Iowa

- September 11, 2019, from Joe Shilkus of Apet, Inc.

DECLARATION OF APET, INCORPORATED

I, Joe Shilkus, hereby declare as follows:

1. I am over the age of eighteen years old, I have personal knowledge of the facts set forth herein, and I am otherwise competent to make this Declaration.

2. I am a Director of Purchasing at Apet, and I am responsible for animal imports, protocol, and distribution. Because of this work, I have personal knowledge regarding the matters discussed below.

3. I understand that the Humane Society Internatinal (HSI) has made a Freedom of Information Act ("FOIA") request to the United States Fish and Wildlife Service ("USFWS") asking for information contained in USFWS's Law Enforcement Management Information System (LEMIS) database. The request seeks information contained in LEMIS fields for Quantity, Declared Value of Wildlife, US Importer/Export, and Foreign Importer/Exporter.

4. Apet objected to the release of this information, which is confidential business information that qualifies for protection under FOIA Exemption 4. I understand that USFWS released certain categories of information but withheld others, and I am informed that HSI is now challenging the information that USFWS withheld and asking that it be released.

5. I submit this declaration in support of USFWS's continued efforts to withhold sensitive business information protected by FOIS Exemption 4. In particular, I seek to explain that (1) the information at issue is both customarily and actually treated as private by its owner, (2) the information is therefore confidential, (3) Apet Inc. has not disclosed the information to the public, and (4) the information is not routinely available to the public from other sources

**Apet and its Commitment to Animal Welfare**

6. Apet is committed to ensuring the humane care and sustainability of companion animals in our distribution business. In addition to complying with applicable legislation and regulations, Apet's facilities and care aim to exceed regulatory agency standards.

7. Apet's commitments to high standards of animal care include:

A Federally licensed USDA facility inspected by Government Agents

Contracted Veterinarian specializing in companion animal health

State of the art facility with strict protocols to insure husbandry, nutrition, and sustainability of all animals.

We ensure all individuals responsible for the care of animals in Apet facilities are comprehensively trained and understand that the animals in our facility are handled with professional and ethical obligation to ensure that animals are treated humanely.

We contract only with organizations that similarly hold high standards of animal care.

**Apet Operates in a Highly Competitive Environment**

8. Apet competes in the U.S. with numerous other distributor companies that sell companion animals to thousands of retailers.

9. To be a competitive companion animal distributor, the company must have access to a consistent, reliable, and affordable supply chain for animals. If this supply chain is disrupted, distribution may become more expensive, which cuts into product profitability and impedes the introduction of companion animals into the market. Thus, having a consistent animal supply chain is critical to competing in the companion animal distribution industry.

10. Within the supply chain, there are secondary layers of competition. In particular, there are very few suppliers available that provide the animals. Likewise, a limited number of airlines transport companion animals and materials from source countries. This limited marketplace creates stiff competition for suppliers and shipping arrangements. The industry's key players face heated competition to secure the best arrangements and, where possible, to keep them exclusive and confidential.

11. Finally, companion animal companies face a unique form of competition from animal rights organizations. Organizations like People for the Ethical Treatment of Animals ("PETA") seek to damage

companies that distribute animals. One of their primary strategies is to disrupt supply chains. To do this, these organizations frequently request import/export information from government agencies and use that information to identify animal suppliers and transporters. They then target those suppliers and transporters with harassment for the purpose of halting companion animals as pets. If an animal rights organization obtains information about one company's distribution but not the corresponding information about other companies, the resulting outcry could disproportionately target the company that has suffered disclosure, further upsetting an already delicate marketplace balance. In a very real way, companion animal companies are in competition with these animal rights organizations.

12. In sum, companion animals are an intensely competitive marketplace. Supply is scarce, demand is high, and the potential for competitive harm is significant because the companion animal supply chain is such a critical part of success in this industry.

**Apet Would Suffer Substantial Competitive Injury if the LEMIS Information Were Released**

13. Apet would be harmed in several ways if the LEMIS information were disclosed.

14. Disclosure may allow competitors to take advantage of our supply and transport relationships. For example, a competitor could look at the LEMIS fields for importer/exporter, quantity, and declared value and easily identify our suppliers, ascertain our import volumes, and estimate the prices we pay. Our competitors could then contact our suppliers and offer a more attractive combination of volume and pricing: this would undercut us, cause our prices to rise, or both. For example, a company could use the Species Code, Genus, Species, and Subspecies fields to determine which species are currently in demand, allowing them to plan their marketing and supply chain strategies. Similarly, competitors could use import/export quantity information to analyze market share and other commercial parameters.

15. Our competitors could use LEMIS data to figure out and take advantage of our shipping arrangements, causing delay and supply chain disruption. Substantial time and effort are often required to develop relationships with suppliers and transporters due to the limited number of suppliers and transporters and the imperative to insure proper regulatory compliance, humane animal welfare practices, and consistent supply. Allowing our competitors to use our information for their strategic planning puts us at a disadvantage.

16. If competitors learned the valuation and pricing information contained in LEMIS and/or Form 3-177, they could undercut us in negotiations and gain valuable insights into our business operations.

17. If suppliers learned the valuation, pricing, sample type, and other information contained in LEMIS, this could be used against us in future negotiations, resulting in loss of profits and less favorable negotiation outcomes.

18. If competitors learned details about our suppliers, they would gain valuable insight into our operations, our business model (including the geographic reach and scope of our operations), and our shipping arrangements. If details about our suppliers became public, it could also damage our negotiating positions throughout our supply chain and provide requesters the ability to contact our suppliers and attempt to interfere with our existing business relationships.

19. If competitors obtained import/export species data and dates of shipment, they could use it in conjunction with other information to determine details of specific imports by cross referencing with other released information.

20. Additionally, disclosure of LEMIS data would greatly increase the risk of supply chain disruption by animal rights groups like PETA. For example, an animal rights group could look at information contained in the importer/exporter LEMIS fields and identify our suppliers. They could use this information, along with carrier, source country, port code, and date of import information to learn our shipping routes and identify which airlines are carrying our animals and/or animal products. Groups like PETA could then target these airlines and suppliers, their management, and their employees with harassment, seeking to dissuade them from supplying or transporting companion animals. This can create supply chain disruption. Such disruptions have occurred numerous times in the past and will occur more often in the future if animal rights organizations are given the road map to our supply chain that LEMIS represents. Where such disruptions reduce the number of companies willing to import and transport companion animals to the United States, such a reduction would negatively impact competition in the companion animal marketplace, increase the price of animals, and create the real possibility of supply chain disruptions, each causing competitive harm to Apet.

21. Supply chain disruptions, even short ones, could create serious problems. For example, if an animal rights organization or competitor interrupted our companion animal supply chain, the resulting delay would increase costs and potentially biosimilar competition, reducing economic incentive. As such, the stakes are high with respect to supply chain issues, and even a seemingly minimal disruption could have significant repercussions.

22.  In conclusion, disclosure of LEMIS information would cause substantial competitive injury to Apet in this intensely competitive marketplace.

In accordance with 28 U.S.C. SSSSS 1746, I declare under penalty of perjury that the foregoing is true and correct

Executed this 11th day of September, 2019.

Joe Shilkus

Director of Purchasing, Apet Inc.

- September 11, 2019, from Ivana Stojadinov of Animal Source Texas, Inc.

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUMANE SOCIETY INT'L, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16-720 |
| v. | ) | |
| | ) | |
| U.S. FISH AND WILDLIFE SERV., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DECLARATION OF IVANA STOJADINOV

I, IVANA STOJADINOV, hereby declare as follows:

1.      I am the Office Manager of Animal Source Texas, Inc ("AST"), a company in the business of lawfully importing and exporting live animals since 1995.

2.      I make this declaration based upon my personal knowledge and information available to me in my capacity as Office Manager of AST.

3.      I am involved in the planning, processing, and completion of each import and export project. My duties include managing all processes and procedures and seeking out ways to improve service, quality, and efficiency.

4.      I understand that Humane Society International ("HSI") submitted a Freedom of Information Act ("FOIA") request to the U.S. Fish and Wildlife Service ("USFWS") seeking Law Enforcement Management Information System ("LEMIS") data relating to the import and export of all wildlife specimens for the years 2002-2010, 2013, and 2014.

5.      In separate letters, dated November 21, 2016 and July 10, 2017, AST submitted letters to the USFWS objecting to the disclosure of privileged and confidential business,

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

financial, and personal information pursuant to Exemptions, 4, 6, and 7(c) of FOIA, 5 U.S.C. §
552(b), including but not limited to: port, purpose, source, disposition date, shipping date,
customs document number, carrier, air waybill or bill of lading number, transportation code, U.S.
importer/exporter, foreign importer/exporter, foreign/U.S. CITES permit number, description
code/source, quantity/units, value, and declaration control number. Based on the sample LEMIS
report that AST received, this includes, but is not necessarily limited to, columns titled: Control
Number, Qty, Unit, Ctry Org, Ctry IE, Purp, Src, Act, Dp Cd, Disp Date, Ship Date, I E, Pt Cd,
U.S. Importer/Exporter, and Foreign Importer/Foreign Exporter.

6.      I understand that on October 16, 2017 the USFWS made a determination,
pursuant to Exemption 4 of FOIA, to withhold certain information, including: Wildlife
Description, Quantity, Unit, Value, Country of Origin, County of Import/Export, Purpose,
Source, Disposition Code, Disposition Date, Shipment Date, Port Code, U.S. Importer/Exporter,
and Foreign Importer/Exporter (collectively, the "Protected Information").

7.      On September 6, 2019, AST received a letter from the USFWS indicating that, on
August 15, 2019, the District Court ruled that the USFWS had not improperly withheld
information under Exemption 6 or Exemption 7(c), but the Court directed the parties to provide
additional arguments regarding the applicability of Exemption 4 based on whether the Protected
Information is kept private.

8.      AST maintains that the Protected Information is confidential commercial and
financial information that is regularly kept private by AST during the course of its business,
because it is critical for AST to maintain its position in a competitive wildlife import/export
market and to maintain the privacy of its customers.

2

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

9.    Only a small number of AST's employees handling a particular import or export matter have access to the Protected Information for the purpose of servicing AST's customers.

10.    AST does not disclose the Protected Information or make it publicly available in any way, nor is it accessible to the public from other sources.

11.    The Protected Information is only provided to the USFWS for the limited purpose of obtaining the necessary approvals for conducting AST's business of importing or exporting animals on behalf of its customers and with the expectation that such information will remain private.

12.    As explained below, it would be counter to AST's competitive interests (not to mention the privacy concerns of its customers) to disclose the Protected Information, which is the reason it is kept private by AST.

13.    The Protected Information can generally be placed into three categories—pricing, AST's institutional knowledge/sources/customers, and AST's logistical expertise. These categories reflect the fact that AST's competitiveness in the market depends on its ability to identify a reputable source of the desired species, ensure the safety and care of the animals during transport, avoid transport and customs delays that could impact the animals' well-being, and deliver the animals to the customer in good condition, all while maintaining profitability by ensuring that the prices paid to the supplier and transport costs do not exceed revenues from the service provided to customers, as well as benefiting society and wildlife.

14.    AST operates in a highly competitive, volatile industry with many active companies, including but not limited to: International Animal Exchange, Royal Oak, MI; Johnson of Harper, TX; Dwayne Lake, GA; S+S Exotics, Houston, TX; Kevin Yates (San Diego

3

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

Zoo); Dave McCauley, TX (wallabies); John Chatfield, FL (kangaroos); Steve Fox, Chicago, IL; and Bill Coburn, OH.

15.    One of the barriers to operating a legitimate import/export business and competing in the wildlife import/export market is the time and expense necessary to develop the necessary institutional knowledge and logistical expertise to meet customer demands and compete on price.

16.    Success in the business, meaning profitability while serving customers and protecting the well-being of the wildlife, is a painstaking and costly process that requires establishing working business relationships with customers and reputable breeders and sources all over the world, vetting those sources, and meeting the demands of customers promptly and without delay.

17.    Indeed, access to quality sources and sources of rare species is an enormous competitive advantage in the industry. Often having a source for a particular species requires a significant expenditure of time and money because a reputable breeder may be located in a different country than the species' country of origin.

18.    A competitor, new entrant, or even a customer of AST that normally would rely on AST's expertise, with access to AST's Protected Information would be in a position to compete with AST among reputable breeders and sources. In an instance where supplies are limited, this could mean paying a much higher price or not being able to obtain the wildlife at all for a customer, which would further damage AST's relationships with its other customers.

19.    AST's competitive pricing, sources, institutional knowledge and its logistical expertise are among its most valuable assets and give AST an advantage over its competitors and new entrants.

4

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

20.    AST has invested significant time and money traveling and meeting with domestic and overseas customers and sources, developing and maintaining its contacts, negotiating prices, and obtaining information about supplies of different species.

21.    AST has spent years building relationships and trust with its sources, including the breeders it uses and foreign importers and exporters, which allow AST to obtain favorable pricing and ensure its customers that the source of the animals is a reputable one.

22.    By disclosing AST's pricing, sources, logistics, and other Protected Information, developed at significant time and expense, new entrants, competitors, and would-be customer-competitors that would not have otherwise been able to compete for customers or for the supply of a certain species would have a shortcut for identifying suppliers and navigating the logistics of importing or exporting an animal through no effort or expense of their own.

23.    Indeed, the disclosure of AST's Protected Information would be patently unfair and contrary to the operation of the free market, because it would give competitors and potential competitors valuable insight into AST's operations, resulting in pricing advantages over AST and an advantage in future negotiations with suppliers and customers.

24.    By way of example, disclosure of the number of units and pricing will put AST at a severe competitive disadvantage because competitors would have a baseline price which they could use to undercut AST when negotiating with customers or overbid AST when negotiating with suppliers.

25.    Similarly, if a competitor knows that AST was able to import a species from a particular country, then even if the source is not identified, the competitor could either contact its owns suppliers in that country or ask its contacts in that country to put the competitor in touch with the supplier, resulting in a new supplier for the competitor (at no cost).

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

26.     As a result, a competitor would gain access to a new high-quality supplier and would be able to compete with AST using AST's Protected Information without the time and expense that AST incurred locating and vetting the new supplier.

27.     A competitor would also be able to use the disclosure of a rare species supplier, a vital asset for AST, as a "catch" to compete for and bring in new customers.  This is particularly a problem for well-established businesses in the industry when facing new entrants or institutional customers, who have not accumulated the institutional knowledge or logistical expertise to successfully compete in the market, and the harm to AST would be further exacerbated by the years of compiled data at issue here.

28.     Additionally, the disclosure of AST's customers would not only give competitors the opportunity to target those customers, it would be seen as a violation of their trust, thereby undermining AST's business relationships, and as a result harm AST's competitiveness.  Given the heightened awareness of privacy concerns in our cyber-world, these issues are even more critical in maintaining proper confidentiality and privacy from prying eyes.

29.     For the aforementioned reasons, AST maintains that the Protected Information is confidential commercial and financial information, which because it is vital to ASTs competitive interest, is kept private by AST, is closely held even within the company, and is not disclosed to or otherwise made available to the public.

30.     Accordingly, AST asks that the Protected Information not be disclosed.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of September, 2019

Ivana Stojadinov

6

- September 12, 2019, from Leonard Gorski of Gorski Group, Ltd.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Humane Society International,           )
                                        )
                                        )
         Plaintiff,                     )
                                        )     Case No. 16-cv-00720
         v.                             )
                                        )
                                        )
U.S. Fish and Wildlife Service,         )
                                        )
         Defendant.                     )
----------------------------------------)

## DECLARATION OF LEONARD GORSKI

I, Leonard Gorski, hereby declare as follows:

1.      I am the Director of Gorski Group Ltd.   A company does import and export fur skin/garments.

2.      As a Director, I am familiar with the company's business operations and treatment of its confidential business information.   I am familiar with the types of information that Gorski Group Ltd. endeavors to keep private.

3.      I make this declaration based upon my personal knowledge and information available to me in my capacity as Director.

4.      I understand that Humane Society International ("HSI") has requested LEMIS data pertaining to exports and imports of wildlife parts, products and specimens from the U.S. Fish & Wildlife Service for the time period of 2002 to 2010, 2013 and 2014.  I understand that FWS has attempted to prevent the majority of this information from disclosure under Freedom of Information Act Exemptions 4, 6 and 7(c), but that the court has requested additional information

1

as to why Exemption 4 should apply following the recent Supreme Court decision of Food Marketing Institute v. Argus Leader Media, 139 S. Ct. 2356 (2019).

5.   It is my understanding that, in Food Marketing Institute v. Argus Leader Media, the Supreme Court concluded that Exemption 4 prevents disclosure of information in instances where the entity sharing the information typically keeps such information as private.

6.   Gorski Group Ltd considers its LEMIS data for the categories of species code, genus, species, subspecies, specific name, generic name quantity, unit, declared value, port code and U.S. importer/exporter to be private and thus contends that these categories should be treated as confidential and exempt from disclosure.

7.   Gorski Group Ltd treats the categories listed above relating to Gorski Group Ltd's imports and exports as both customarily and actually private; thus, the information is therefore confidential.

8.   Gorski Group Ltd has not disclosed such information about imports and exports to the public.

9.   Gorski Group Ltd believes that the information contained within its LEMIS data is not routinely available to the public from other sources.

10.   Specifically, Gorski Group Ltd keeps private all of the information contained in the LEMIS categories relating to the release of identifiable characteristics - such as the number of cartons of wildlife transported, scientific and common names of species, country of origin code, quantity/unit and monetary value.  This information is kept private because, if released, it would disclose the Gorski Group Ltd's pricing guidelines, financial algorithms and strategic business information to competitors.

2

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___12th____ day of September 2019.

Leonard Gorski

Director

Gorski Group Ltd.

3

- September 12, 2019, from Winifred Luty of BioIVT, LLC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Humane Society International          )
                                      )
                                      )
         Plaintiff,                   )
                                      )          Case No. 1:16-cv-00720
         v.                           )
                                      )
U.S. Fish and Wildlife Service,       )
                                      )
         Defendant.                   )
_____ )

## DECLARATION OF WINIFRED LUTY

I, WINIFRED LUTY, hereby declare:

1. I am over the age of eighteen years old, I have personal knowledge of the facts set forth herein, and I am otherwise competent to make this Declaration.

2. I am the Sr. Director of Biologic Operations of BioIVT LLC ("BioIVT"), and I am responsible for operations of the Normal Human and Animal Business Unit. Because of this work, I have personal knowledge regarding the matters discussed below.

3. I understand that the Humane Society International ("HSI") sued the United States Fish and Wildlife Services ("FWS") alleging that FWS improperly withheld certain categories of information contained in FWS's Law Enforcement Management Information System ("LEMIS") database related to the import and export of wildlife specimens that HSI had requested under FOIA. HSI had withheld the sought-after LEMIS information on the bases of FOIA Exemptions 4, 6, and 7(c).

4. I understand that the U.S. District Court for the District of Columbia ruled on August 15, 2019 that FWS had properly withheld information under Exemption 6 or 7(c), and determined that it could not yet render a decision on Exemption 4 and asked for additional arguments as to why Exemption 4 does or does not apply to the information sought by HSI in light of a recent Supreme Court decision, Food Marketing Institute v. Argus Leader Media, 139 S. Ct. 2356 (2019).

5. I submit this declaration to support FWS's withholding of the following BioIVT information contained in LEMIS Fields as protected by FOIA Exemption 4 because: (1) BioIVT customarily and actually treats this information as private; (2) this information is confidential; (3) BioIVT has not disclosed this information to the public; and (4) this information is not routinely available to the public from other sources: Species Code

1

Genus, Species, Subspecies, Specific Name, Generic Name, Quantity, Unit, Declared Value of Wildlife, Country IE [Import/Export], Disposition Date, Shipment Date, and Foreign Importer / Exporter.

BioIVT Customarily And Actually Treats The Information That HSI Requested As Private

6.   BioIVT vigorously guards the secrecy of this information through: (1) executing employee and contractor confidentiality agreements and non-disclosure agreements with its customers, auditors, investors and prospective investors; (2) making information available to individuals on a need-to-know basis; (3) maintaining a company-wide confidentiality policy and program for training employees on the confidentiality of this information, how guard it, and how to report suspected and actual breaches; (4) creating the position of privacy officer responsible for overseeing the protection of confidential information; (5) physical safeguards to control access such as locks for confidential hard-copy materials, password-protection for confidential data stored electronically, and industry standard network security; and (6) prohibiting partners and customers from publishing information that they derive from our services and products until we complete a pre-publication review for our confidential information.  If we have a breach or threatened breach, we would pursue it to the fullest extent of the law.

The Information that HSI Requested Is Confidential

7.   The information requested by HSI is confidential because competitors could use it to undercut BioIVT's business.  Specifically, information about foreign exporters, together with shipment volumes, species, and the origin of the wildlife, to identify BioIVT's sources along with its entire distribution network and demand trends.  Competitors could use the value, type and volume of specimens, together with the identity and locations of BioIVT's customers to try to steal those customers by reaching out to them and offering similar specimens at lower prices.  BioIVT has expended great time and expense in identifying successful product lines and in identifying customers and developing relationships with them.  If the U.S. Fish and Wildlife Service releases BioIVT's value together with sales volumes of material from particular species, wildlife origins of particular species, and customer information, rivals could use it without any of their own effort to gain a competitive advantage over BioIVT and weaken BioIVT's business.  Competitors could use the value and quantity of shipments to estimate our purchase prices.  If our purchase prices were publicized, it would severely hurt us in negotiations since our customers could estimate our margins and demand lower sales pricing.

BioIVT Has Not Disclosed The Information That HSI Requested To The Public

8.   BioIVT does not publicize the information that HSI requested because doing so would severely damage its business, as explained in Paragraph 7 above.  BioIVT's public facing website does not include any of the information requested by HSI.  BioIVT does not disclose this information in its marketing materials or at industry conventions where it presents its product and service offerings to potential customers in the science community.  When interviewed by journalists, customers, or potential customers, BioIVT does not provide this information.

**The Information That HSI Requested Is Not Routinely Available To The Public From Other Sources**

9.  Because of the protocols and processes that BioIVT implements to guard the secrecy of the information requested by HSI described above in Paragraph 6, this information is not available to the public. For instance, this information cannot be obtained through internet search engines, news outlets, academic journals, books, or government archives.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: ___9/12/2019___       ___[signature]___
                             WINIFRED LUTY
                             Sr. Director Biologic Operations

3

- September 13, 2019, from Kamuran Tepedelen of Bushmaster Reptiles, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Humane Society International, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16-cv-00720 |
| v. | ) | |
| | ) | |
| | ) | |
| U.S. Fish and Wildlife Service, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DECLARATION OF KAMURAN TEPEDELEN

I, Kamuran Tepedelen , hereby declare as follows:

1.    I am the President/Owner of Bushmaster Reptiles, Inc.   We are a Colorado based small business which imports and exports live reptiles for the pet, zoological and collector communities.

2.    As President, I am familiar with the company's business operations and treatment of its confidential business information.    I am familiar with the types of information that Bushmaster Reptiles endeavors to keep private.

3.    I make this declaration based upon my personal knowledge and information available to me in my capacity as President

4.    I understand that Humane Society International ("HSI") has requested LEMIS data pertaining to exports and imports of wildlife parts, products and specimens from the U.S. Fish & Wildlife Service for the time period of 2002 to 2010, 2013 and 2014.  I understand that FWS has attempted to prevent the majority of this information from disclosure under Freedom of

4830-9034-4612v.1

Information Act Exemptions 4, 6 and 7(c), but that the court has requested additional information as to why Exemption 4 should apply following the recent Supreme Court decision of *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019).

5. It is my understanding that, in *Food Marketing Institute v. Argus Leader Media*, the Supreme Court concluded that Exemption 4 prevents disclosure of information in instances where the entity sharing the information typically keeps such information as private.

6. Bushmaster considers its LEMIS data for the categories of species code, genus, species, subspecies, specific name, generic name quantity, unit, declared value, port code and U.S. importer/exporter to be private and thus contends that these categories should be treated as confidential and exempt from disclosure.

7. Bushmaster treats the categories listed above relating to imports and exports as both customarily and actually private; thus, the information is therefore confidential.

8. Bushmaster has not disclosed such information about imports and exports to the public.

9. Bushmaster believes that the information contained within its LEMIS data is not routinely available to the public from other sources.

10. Specifically, Bushmaster keeps private all of the information contained in the LEMIS categories relating to the release of identifiable characteristics - such as the number of cartons of wildlife transported, scientific and common names of species, country of origin code, quantity/unit and monetary value. This information is kept private because, if released, it would disclose Bushmaster's pricing guidelines, financial algorithms and strategic business information to competitors.

4830-9034-4612v.1

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this __13__ day of September 2019.

Kamuran Tepedelen

President/Owner

Bushmaster Reptiles, Inc.

3

Bushmaster Reptiles, Inc.

3

- September 14, 2019, from Marvin Yarrow of The Newmount Group.



**THE NEWMONT GROUP, INCORPORATED**
535 EIGHTH AVENUE, SUITE 400
NEW YORK, NY 10018
TEL: (212-268-9000)
FAX: (212-279-0820)

United States Department of the Interior
Fish & Wildlife Service
Office of Law Enforcement
5275 Leesburg Pike (MS-OLE)
Falls Church, VA 22041-3803

September 14, 2019

Re: Federal Register Notice 81 Fed Reg. 75838 (Nov. 1, 2016)

**"DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA LAWSUIT"**

To whom it may concern,

Thank you for your letter dated September 6th, 2019.

I would like to confirm the following:

1) All information pertaining to our company The Newmont Group is treated as private by myself, the owner.
2) All information is therefore confidential.
3) The Newmont Group has never disclosed any information to the public.
4) All information pertaining to our company is not routinely available to the public from any source.

Thank you for your attention regarding this matter.

Sincerely,

Marvin Yarrow

The Newmont Group
President

P.S.

Please note, we have recently moved to a new location. The address is as follows:

The Newmont Group, INC
535 Eighth Avenue, Suite 400
New York, NY 10018
T: 212-268-9000
F: 212-279-0820

- September 16, 2019, from Howard Noseworthy of Fur Harvesters Auction, Inc.



1867 Bond Street
North Bay, ON P1B 8K6
Canada
Tel. (705) 495-4688
Fax. (705) 495-3099
www.furharvesters.com

September 16, 2019

U.S. Fish and Wildlife Service
Office of Law Enforcement (FOIA)
5275 Leesburg Pike (MS:OLE)
Falls Church, VA  22041

**DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA LAWSUIT**

To Whom It May Concern:

Fur Harvesters Auction Inc. (FHA) hereby declares that in the matter noted above pertaining to
LEMIS data that is the confidential information of FHA:

1. that the information at issue is both customarily and actually treated as private by its
   owner;
2. that the information is therefore confidential;
3. that Fur Harvesters Auction Inc. has not disclosed the information to the public;
   and
4. that the information is not routinely available to the public from other sources.

Howard Noseworthy
Director of Planning & Development

- September 16, 2019, from Laura Reid of Fish Mart, Inc.

1-3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Humane Society International, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 16-720 (TJK) |
| | ) |
| U.S. Fish and Wildlife Service, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| and | ) |
| | ) |
| Safari Club International | ) |
| | ) |
| Defendant-Intervenor | ) |
| | ) |

## <u>DECLARATION OF LAURA REID</u>

I, Laura Reid, hereby declare as follows:

1.     I am President of Fish Mart located in Connecticut that is an importer of aquatic organisms.

2.     As President of Fish Mart for the past 39 years, I am familiar with the company's business operations and treatment of its confidential business information related to the sourcing, acquisition, and sale of wildlife species handled by Fish Mart. I oversee all types of information that Fish Mart treats as private and therefor confidential business information.

3.     I make this declaration based upon my personal knowledge and information available to me in my capacity as Fish Mart's President.

1

09/17/2019  16:09    12039379865          FISH MART          PAGE  05/06

2-3

4.      I understand that the Humane Society International ("HSI") is seeking the LEMIS data pertaining to imports of our wildlife specimens from the U.S. Fish & Wildlife Service for the time period of 2002 to 2010, as well as for the years 2013 and 2014.  I also understand that the Fish and Wildlife Service attempted to prevent the majority of this information from disclosure under the Freedom of Information Act Exemptions 4, 6 and 7(c), but that this Court has requested additional information as to why Exemption 4 should apply following the recent Supreme Court decision of *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019).

5.      It is my understanding that, in *Food Marketing Institute v. Argus Leader Media*, the Supreme Court concluded that Exemption 4 prevents the disclosure of information in instances where the entity sharing such information with the United States Government pursuant to Federal regulations which is otherwise private and therefore confidential, generally not routinely disclosed to the public and not routinely available to the public from other sources.

6.      Fish Mart considers its LEMIS data for the categories of "Species Code, Genus, Species, Subspecies, Specific Name, Generic Name, Quantity, Declared Value of Wildlife, Country of Origin, Country Import/Export, Source, Shipment Date, Port Code, and Foreign Importer/Exporter" to be private and submits therefore that these categories should be treated as private and confidential and exempt from disclosure by the U.S. Government.

7.      Fish Mart customarily and actually treats such data as private and confidential business information.

8.      Fish Mart has not disclosed such information to the public.

9.      Fish Mart believes that the information contained within its LEMIS data is not routinely available to the public from other sources.

09/17/2019   16:09   12039379865                FISH MART                         PAGE  06/06

3-3

10.   Fish Mart keeps private its information that is contained in the LEMIS categories relating to the release of information identifying the species, the country of origin, the names and addresses of our sources or our customers, the numbers of specimens by species imported, the quantities/units and monetary values of the species or the shipments or details as to shipment contents, import/export ports, import dates, and other logistical data.  This information is kept private because, if released, it would disclose Fish Mart's pricing structures, inventory information, marketing strategies, seasonality, and other financial, logistical, and strategic business information to competitors.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of September 2019.

*Laura J Reid*

Laura Reid
President
Fish Mart, Inc.
28 Richards Street
West Haven, CT 06516

3

- September 18, 2019, from Sandra Moore of Segrest Farms, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Humane Society International, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action Case No. 16-720 (TJK) |
| | ) | |
| U.S. Fish and Wildlife Service *et al.*, | ) | |
| | ) | |
| *Defendants,* | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| Safari Club International | ) | |
| | ) | |
| *Defendant-Intervenor,* | ) | |
| | ) | |

## DECLARATION OF SANDRA MOORE

I, Sandra Moore hereby declare as follows:

1.      I am the President of Segrest Farms Inc., which is engaged in importing and exporting a variety of aquatic species from around the world for the pet trade, public aquariums, zoological institutions, and others throughout the United States.

2.      As President of Segrest Farms Inc., I am responsible for all facets of the business and am therefore familiar with the company's business operations and treatment of its confidential business information.  I am familiar with the types of information that Segrest Farms Inc. treats and maintains as confidential business information and private.

3.      I make this declaration based upon my personal knowledge and information available to me during my 28 years in various management positions at Segrest Farms Inc. including my current position as Segrest Farms Inc.'s President.

1

4.    I understand that the Humane Society International ("HSI") requested LEMIS data pertaining to exports and imports of wildlife specimens from the U.S. Fish & Wildlife Service for the years 2002 to 2010, 2013 and 2014. I understand that FWS attempted to prevent the majority of this information from disclosure under the Freedom of Information Act Exemptions 4, 6 and 7(c), but that this Court has requested additional information as to why Exemption 4 should apply following the recent Supreme Court decision of *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019).

5.    It is my understanding that the Supreme Court concluded that Exemption 4 prevents disclosure of information in instances where the entity sharing the information with the United States Government as required by law typically treats and maintains that information as proprietary business information and such data is customarily and actually treated as private and therefore confidential information.

6.    Segrest Farms Inc. considers its LEMIS data for the categories of "Species Code, Genus, Species, Subspecies, Specific Name, Generic Name, Quantity, Declared Value of Wildlife, Country of Import/Export, Source, Shipment Date, Port Code and U.S. Importer/Exporter and Foreign Importer/Exporter" to be private and should be treated as confidential and remain exempt from disclosure under Exemption 4.

7.    Segrest Farms Inc. treats the categories listed above relating to Segrest Farms Inc.'s imports and exports as private business information and maintains such information as confidential.

8.    Segrest Farms Inc. does not and has not disclosed such LEMIS data to its competitors or the public.

9.    Segrest Farms Inc. believes that its information contained within LEMIS data is not routinely available to the public from other sources.

10.   Historically, Segrest Farms Inc. keeps private all of the information contained in the LEMIS categories relating to the release of any information that would provide our sources, customers, competitors or the public the ability to ascertain the identity of our sources or our customers, data revealing specific species involved in our imports/exports, the numbers of specimens by species, countries of origin

2

or destination, or data revealing seasonality, cost information, quantities/units imported/exported or monetary values of shipments or individual species. This information is kept private by Segrest Farms Inc. because, if released, it would disclose significant financial and other trade data and strategic business information to our competitors and the public.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of September 2019.

Sandra Moore
President
Segrest Farms Inc.
(Mailing) P.O. Box 758
Physical address:
6180 Big Bend Road
Gibsonton, FL 33534

- September 18, 2019, from D. Raghav Shan, attorney for Oregon Health and Science University.



**OHSU**

**Legal Department**

Mail Code L585
3181 SW Sam Jackson Park Rd.
Portland, OR 97239

tel 503-494-5222
fax 503-494-0917

September 18, 2019

**Via E-Mail**

U.S. Fish and Wildlife Service
Office of Law Enforcement (FOIA)
5275 Leesburg Pike (MS: OLE)
Falls Church, VA 22041
ole_foia_submitter_notice@fws.gov

**Re: DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA LAWSUIT**

To Whom It May Concern:

With the accompanying declaration, Oregon Health and Science University, responds to the U.S. Fish and Wildlife Service's invitation to submit reasons why data appearing in the columns for "U.S. Importer/Exporter and Foreign Importer/Exporter" should be treated as confidential, and not subject to disclosure under FOIA Exemption 4, in light of *Food Marketing Institute v. Argus Leader Media,* 139 S. Ct. 2356 (2019).

**Declaration of Oregon Health and Science University**

I, D. Raghav Shan, Legal Counsel for Oregon Health and Science University, hereby declare as follows

1.  I am over the age of eighteen years old, I have personal knowledge of the facts set forth

    herein, and I am otherwise competent to make this Declaration.

2.  I am an attorney for Oregon Health and Science University ("OHSU") and part of my duties

    include legal advice relating to public records requests and their associated matters. I have

    compiled the information in the statements set forth below either through personal

    knowledge, through OHSU personnel who have assisted me in gathering this information

    from our institution, or on the basis of the documents that have been provided to and/or

    reviewed by me.

3. I understand that Humane Society International ("HSI") has made a Freedom of Information Act ("FOIA") request to the United States Fish and Wildlife Service ("USFWS") asking for information contained in USFWS's Law Enforcement Management Information System ("LEMIS") database. The request seeks information contained in LEMIS fields for Wildlife Category, Import/Export, Country of Origin, Port Code, Quantity, Shipment Date and others.

4. I understand that the FOIA requests led to a FOIA lawsuit against USFWS, *Humane Society Int'l v. U.S. Fish & Wildlife Serv.*, No. 16-720 (D.D.C., filed Apr. 18, 2016), with HSI alleging that USFWS had improperly withheld certain categories of LEMIS information from public disclosure on the basis of FOIA Exemption 4, 6 and 7(C).

5. I understand that on August, 15, 2019, the United States District Court for the District of Columbia ruled that USFWS had not improperly withheld information under Exemption 6 or Exemption 7(C), but could not render a decision on Exemption 4 based on the record before it and directed the parties to provide additional arguments as to why Exemption 4 does or does not apply in light of *Food Marketing Institute v. Argus Leader Media,* 139 S. Ct. 2356 (2019).

6. I submit this declaration in support of USFWS's continued efforts to withhold confidential information protected by FOIA Exemption 4.

7. The U.S. Importer/Exporter and Foreign Importer/Exporter details pertaining to OHSU relate to research projects that are collaborative projects between OHSU and other institutions or involve engaging third parties in the business of importing/exporting goods or services for OHSU. In these instances, release of the collaboration or importer/exporter relationship, along with the nature of the research being carried out or what is being imported or exported could reveal a collaboration involving sensitive research

2

collaborations for certain research activities. In addition, in instances involving the release of an importer or exporter's name along with the products and value received or sent, revelation of sensitive product and pricing information of the importer or exporter is possible.

8. OHSU takes extensive measures to keep U.S. Importer/Exporter and Foreign Importer/Exporter information private including, but not limited to, limiting access to the information, storing the information in secure folders, removing as much identifying information as possible and avoiding public access and/or publication of the information.

9. Indeed, because of, but not limited to, the factors above, LEMIS data pertaining to U.S. Importer/Exporter and Foreign Importer/Exporter information is customarily and actually treated as private by OHSU.

10. OHSU information relating to U.S. Importer/Exporter and Foreign Importer/Exporter LEMIS data is confidential as contemplated by the Supreme Court of the United States in *Food Marketing Institute*.

11. OHSU has not disclosed U.S. Importer/Exporter and Foreign Importer/Exporter information to the public.

12. OHSU is not aware of its U.S. Importer/Exporter and Foreign Importer/Exporter information being made routinely available to the public from other sources.

13. In conclusion, the U.S. Importer/Exporter and Foreign Importer/Exporter LEMIS information kept by OHSU is customarily and actually treated as private and confidential by OHSU, the information has not been disclosed to the public by OHSU and is not believed to be information routinely made available to the public from other sources and, therefore, should be exempt from disclosure under FOIA Exemption 4.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8 day of September, 2019.

D. Raghav Shan
Legal Counsel
Oregon Health & Science University

4

- September 19, 2019, from John Mack of Reptiles by Mack, LLC.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Humane Society International, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Civil Action No. 16-720 (TJK) |
| v. | ) | |
| | ) | |
| U.S. Fish and Wildlife Service *et al.,* | ) | |
| | ) | |
| *Defendants,* | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| Safari Club International | ) | |
| | ) | |
| *Defendant-Intervenor* | ) | |
| | ) | |

## DECLARATION OF JOHN MACK

I, John Mack hereby declare as follows:

1. I am the founder and President of Reptiles by Mack, LLC which is engaged in importing and exporting a variety of reptile organisms to and from a variety of countries.

2. Since its inception over 20 years ago, I have been responsible for overseeing all aspects of the company's operations and I have personal knowledge regarding the matters discussed below with respect to maintaining and treating private business information as confidential and I make this Declaration based upon my personal knowledge and information made available to me as President of Reptiles by Mack.

3. I understand that the Humane Society International ("HSI") is seeking LEMIS data pertaining to wildlife imports and exports for the years 2002 to 2010, as well

1

as 2013 and 2014.

4. I understand that FWS attempted to prevent this information from disclosure under the Freedom of Information Act Exemptions 4, 6 and 7(c), but that this Court has requested additional information as to why Exemption 4 applies following the recent Supreme Court decision in the Food Marketing Institute case.

5. It is my understanding that the Supreme Court found that Exemption 4 prevents disclosure of information in instances where companies like Reptiles by Mack share certain information with the United States Government as required by law that we typically treat and maintain as private business information and therefore confidential.

6. I submit this Declaration in support of the Service's continued withholding of LEMIS data involving "Species Code, Genus, Species, Subspecies, Specific Name, Generic Name, Quantity, Declared Value of Wildlife, Country of Import/Export, Source, Shipment Date, Port Code and U.S. Importer/Exporter and Foreign Importer/Exporter" as private and sensitive confidential business information. Release of such information would provide our competitors with business and other proprietary and confidential information that we are required to provide to the United States Government. The release of such data would cause Reptiles by Mack irreparable harm if released to our competitors or the general public.

7. Reptiles by Mack customarily and actually treats LEMIS data as private and therefore confidential and does not make such data available to the public.

8. The release of such business information to any competitor or customer provides them with confidential data, including but not limited to providing them information so they would be able to access our supply chain and disrupt our

ongoing business relationships in which we have made significant investments to create and maintain. Reptiles by Mack does not make such information available to our competitors or the public.

9. As President of Reptiles by Mack, I hereby certify that LEMIS data information is treated as internal confidential business information and therefore is treated as "confidential" and "private" and that Reptiles by Mack has not and does not disclose such information to the public, and believes this information is not routinely available to the public from other sources.

10. Reptiles by Mack treats as private the types of information maintained in LEMIS relating to information identifying countries of origin, the names and addresses of our sources and customers, numbers of specimens by species imported, quantities/units and monetary values of shipment contents, import/export ports, import dates, and other logistical and strategic data. This information is kept private because, if released, it would reveal information with respect to inventory information, marketing strategies, seasonality, and other financial, logistical, and strategic business information sought by competitors.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of September 2019

John Mack
President
Reptiles by Mack, LLC.
1332 Burnett Drive
Xenia, OH 45385

3

- September 19, 2019, from James Peterson of PM Wildlife Studios, Inc, d/b/a Brush Country Studios.



Brush Country Studios
16526 Cypress Rosehill Rd
Cypress, TX  77429
(281) 256-0742
http://www.brushcountrystudios.com

September 19, 2019

U.S. Fish and Wildlife Services
Office of Law Enforcement (FOIA)
5275 Leesburg Pike (MS-OLE)
Falls Church, VA  22041-3803

**DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA LAWSUIT**

Reference:      Federal Register Notice 81 Fed
                Reg. 75838 (Nov 1, 2016)

PM Wildlife Studios, Inc. (dba Brush Country Studios) is declaring that:

> LEMIS data for wildlife description, quantity, unit, declared value of
> wildlife, country or origin, country of import/export, purpose, source,
> disposition code, disposition date, shipment date, port code, U.S.
> importer/exporter, and foreign importer/exporter, is:

- Customarily and actually treated as private by its owner
- Confidential
- Not disclosed to the public, and
- Not routinely available to the public from other sources.

We feel this information is private and should not be available to the public and should be withheld
from disclosure under exemption 4.

Please record our objection on this matter and process according to procedure.

Sincerely,

James Peterson
General Manager
PM Wildlife Studios, Inc. (Brush Country Studios)

- September 19, 2019, from James Peterson of Prairie Mountain Wildlife Studios, LLC.



Prairie Mountain Wildlife Studio
16526 Cypress Rosehill Rd
Cypress, TX 77429
(281) 256-0742
http://www.prairiemountainwildlife.com

September 19, 2019

U.S. Fish and Wildlife Services
Office of Law Enforcement (FOIA)
5275 Leesburg Pike (MS-OLE)
Falls Church, VA  22041-3803

**DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA LAWSUIT**

Reference:     Federal Register Notice 81 Fed
               Reg. 75838 (Nov 1, 2016)

Prairie Mountain Wildlife Studios, LLC is declaring that:

> LEMIS data for wildlife description, quantity, unit, declared value of
> wildlife, country or origin, country of import/export, purpose, source,
> disposition code, disposition date, shipment date, port code, U.S.
> importer/exporter, and foreign importer/exporter, is:

- Customarily and actually treated as private by its owner
- Confidential
- Not disclosed to the public, and
- Not routinely available to the public from other sources.

We feel this information is private and should not be available to the public and should be withheld
from disclosure under exemption 4.

Please record our objection on this matter and process according to procedure.

Sincerely,

James Peterson
General Manager
Prairie Mountain Wildlife Studios, LLC

- September 19, 2019, from Joel Rakower of Transship Discounts, Ltd.

<u>DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA
LAWSUIT</u>

<u>DECLARATION OF JOEL RAKOWER</u>

I, Joel Rakower, hereby declare as follows:

1.      I am the President of Transship Discounts, Ltd.

2.      As President and founder of the company, I am familiar with the types of information related to importing and exporting aquatic organisms that we consider private and therefore confidential business information which is routinely withheld from our competitors, and the public.

3.      I make this declaration based upon my personal knowledge and information available to me in my capacity as Transship's President overseeing our importing, exporting and distribution activities.

4.      I understand that the Humane Society International ("HSI") is seeking LEMIS data involving our imports and exports of wildlife from the U.S. Fish & Wildlife Service for various years --- 2002 to 2010, and 2013 and 2014. I also understand that FWS has attempted to prevent Transship's information from disclosure under Freedom of Information Act Exemptions 4, 6 and 7(c), but this Court has requested additional information to demonstrate why Exemption 4 should apply following the Supreme Court's decision in Food Marketing Institute v. Argus Leader Media, 139 S. Ct. 2356 (2019). It is also my understanding that the Supreme Court determined that Exemption 4 prevents disclosure of information in instances where the entity

1

sharing such information with the U.S. Government pursuant to Federal regulations typically keeps that information as private and therefore confidential.

5.     I understand that the Supreme Court determined that the Exemption 4 protects from disclosure information in instances where the company sharing such information with the U.S. Government pursuant to Federal Regulations which is otherwise private and therefore confidential, keeps such information as private, is not routinely disclosed to the public, and is not routinely available to the public from other sources.

6.     Transship considers its LEMIS data covering "Species Code, Genus, Species, Subspecies, Specific Name, Generic Name, Quantity, Declared Value of Wildlife, Country of Import/Export, Source, Shipment Date, Port Code and U.S. Importer/Exporter and Foreign Importer/Exporter" to be private and confidential business-related information and these categories should be treated as confidential, private and exempt from disclosure pursuant to the provisions of Exemption 4.

7.     Transship handles the categories listed above relating to our company's imports and exports as private business data; therefore, Transship customarily and actually treats such information as private and confidential.

8.     Transship has not disclosed such information about its imports and exports to its competitors or the public.

9.     Transship believes that proprietary information contained within LEMIS data is not available to the public from other sources.

10.    Transship keeps private the information contained in the LEMIS categories relating to any identifiable characteristics that reveal business data such as the number of specimens by species imported or exported by country and/or by source, port codes, import dates, quantities/units, monetary values by species, shipment or other data revealing the scope of

our activities.  Transship does not publicize or otherwise make public the types of information we are required to provide the Fish and Wildlife Service that resides in the LEMIS system that would allow one to identify our sources of supply, identify of our customers, numbers of specimens or species data by shipment, or any financial data revealing our costs, pricing structures or marketing strategies, including seasonality. This information is kept private because, if released, it would disclose strategic business information to the public, including our competitors.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of September 2019.

Joel Rakower
President
Transship Discounts, Ltd.
157-01 Rockaway Blvd.
Jamaica, NY 11434

3

- September 19, 2019, from Barry Wisebram of Sun Pet, Ltd.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Humane Society International, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Civil Action No. 16-720 (TJK) |
| v. | ) | |
| | ) | |
| U.S. Fish and Wildlife Service *et al.,* | ) | |
| | ) | |
| *Defendants,* | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| Safari Club International | ) | |
| | ) | |
| *Defendant-Intervenor* | ) | |
| | ) | |

DECLARATION OF BARRY WISEBRAM

I, Barry Wisebram, hereby declare as follows:

1.     I am a Vice President and one of the founders of Sun Pet LTD. which is engaged in the importation and distribution of a variety of reptiles and aquatic organism throughout the United States. Sun Pet LTD. imports and exports a variety of wildlife species for the pet trade.

2.     As Vice President of Sun Pet LTD., I am responsible for all facets of the business and am familiar with the company's business operations and treatment of its confidential business information. I am familiar with and oversee the types of information that Sun Pet LTD. keeps private.

3.     I make this declaration based upon my personal knowledge and information available to me in my capacity as Sun Pet LTD.'s Vice President over the past 20 years.

1

4.      I understand that the Humane Society International ("HSI") has requested LEMIS data pertaining to exports and imports of wildlife parts, products and specimens from the U.S. Fish & Wildlife Service covering years 2002 to 2010, 2013 and 2014.  I understand that the FWS has attempted to prevent the majority of this information from disclosure under the Freedom of Information Act Exemptions 4, 6 and 7(c), but that this Court has requested additional information as to why Exemption 4 should apply following the recent Supreme Court decision of *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019).

5.      It is my understanding that the Supreme Court concluded that Exemption 4 prevents disclosure of information in instances where the entity sharing the information with the United States Government as required by Federal regulations typically keeps that information as private and confidential.

6.      Sun Pet LTD., considers its LEMIS data for the categories of "Species Code, Genus, Species, Subspecies, Specific Name, Generic Name, Quantity, Declared Value of Wildlife, Country of Import/Export, Source, Shipment Date, Port Code and U.S. Importer/Exporter and Foreign Importer/Exporter" to be private information and supports Exemption 4 treatment of Sun Pet LTD.'s LEMIS data as confidential and exempt from disclosure.

7.      Sun Pet LTD. treats the categories listed above relating to our imports and exports as both customarily and actually private information and this information should be treated by the Fish and Wildlife Service as confidential information.

8.      Sun Pet LTD. does not disclose such information about its imports and exports to the public.

9.      Sun Pet LTD. believes that the information contained within its LEMIS data is not routinely available to the public from other sources.

2

10.     Specifically, Sun Pet LTD. keeps private all of the information contained in the LEMIS categories relating to the release of identifiable characteristics of the species we import or export, source countries, information revealing the identities of our sources or customers, and the quantity or monetary unit values of individual species imported/exported. These types of information are kept private because, if released, such data would disclose Sun Pet LTD.'s internal marketing and financial data and other strategic business information to competitors.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of September 2019.

Barry Wisebram
Vice President
Sun Pet LTD.
3765 Zip Industrial Blvd.
Atlanta, Ga., 30354

- September 20, 2019, from Robert Vitro of Safari Specialist, Inc., d/b/a True-Life
  Taxidermy.

⊙ 09-20-2019 11:42 AM        Fax Services        → 17033582271

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HUMANE SOCIETY INT'L,    )
    )
    Plaintiff,    )
    )
    v.    )    Case No. 16-720
    )
U.S. FISH AND WILDLIFE SERV.,    )
    )
    Defendant.    )
    )

### DECLARATION OF ROBERT VITRO

I, ROBERT VITRO, hereby declare as follows:

1.    I am the owner of Safari Specialist Inc. d/b/a True-Life Taxidermy ("SSI"), a company in the business of preserving sport hunted trophies, among other animals and scenes in a realistic manner through taxidermy and other techniques.

2.    I make this declaration based upon my personal knowledge and information available to me in my capacity as owner.

3.    I understand that Humane Society International ("HSI") submitted a Freedom of Information Act ("FOIA") request to the U.S. Fish and Wildlife Service ("USFWS") seeking Law Enforcement Management Information System ("LEMIS") data relating to the import and export of all wildlife specimens for the years 2002-2010, 2013, and 2014.

4.    In separate letters, dated November 22, 2016 and July 10, 2017, SSI submitted letters to the USFWS objecting to the disclosure of privileged and confidential business, financial, and personal information pursuant to Exemptions, 4, 6, and 7(c) of FOIA, 5 U.S.C. § 552(b), including but not limited to: port, purpose, source, disposition date, shipping date,

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

customs document number, carrier, air waybill or bill of lading number, transportation code, U.S. importer/exporter, foreign importer/exporter, foreign/U.S. CITES permit number, description code/source, quantity/units, value, and declaration control number. Based on the sample LEMIS report that SSI received, this includes, but is not necessarily limited to, columns titled: Control Number, Qty, Unit, Ctry Org, Ctry IE, Purp, Src, Act, Dp Cd, Disp Date, Ship Date, I E, Pt Cd, U.S. Importer/Exporter, and Foreign Importer/Foreign Exporter.

5.     I understand that on October 16, 2017 the USFWS made a determination, pursuant to Exemption 4 of FOIA, to withhold certain information, including:  Wildlife Description, Quantity, Unit, Value, Country of Origin, County of Import/Export, Purpose, Source, Disposition Code, Disposition Date, Shipment Date, Port Code, U.S. Importer/Exporter, and Foreign Importer/Exporter (collectively, the "Protected Information").

6.     On September 6, 2019, SSI received two letters (addressed separately to SSI and True-Life) from the USFWS indicating that, on August 15, 2019, the District Court ruled that the USFWS had not improperly withheld information under Exemption 6 or Exemption 7(c), but the Court directed the parties to provide additional arguments regarding the applicability of Exemption 4 based on whether the Protected Information is kept private.

7.     SSI maintains that the Protected Information is confidential commercial and financial information that is regularly kept private by SSI during the course of its business, because it is critical for SSI to maintain its position in a competitive taxidermy market and to maintain the privacy of its customers.

8.     Only I, or at most a small number of our employees handling a particular taxidermy matter, have access to the Protected Information for the purpose of servicing SSI's customers.

2

Case 1:16-cv-00720-TJK   Document 50-2   Filed 10/22/19   Page 87 of 115

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

9.      SSI does not disclose the Protected Information or make it publicly available in any way, nor is it accessible to the public from other sources.

10.     The Protected Information is only provided to the USFWS for the limited purpose of obtaining the necessary approvals for conducting SSI's business on behalf of its customers and with the expectation that such information will remain private.

11.     As explained below, it would be counter to SSI's competitive interests (and to the privacy concerns of its customers) to disclose the Protected Information, which is the reason it is kept private by SSI.

12.     The Protected Information listed above can generally be placed into several categories—pricing, SSI's institutional knowledge/sources/customers, and SSI's logistical expertise. These categories reflect the fact that SSI's competitiveness in the market depends on its ability to target and maintain customers, offer a competitive pricing menu, assure quality control, and to assure its customers that SSI has the necessary expertise and resources to deliver the animals to the customer in good condition, all while maintaining profitability by ensuring that the prices paid to the supplier and transport costs do not exceed revenues from the service provided to customers, as well as benefiting society and wildlife.

13.     SSI operates in a highly competitive industry with many active companies, including but not limited to: Animal Artistry, Woodlands, and hundreds of other competing taxidermy and wildlife art studios throughout the United States and abroad.

14.     One of the barriers to operating a legitimate taxidermy business and competing in the wildlife taxidermy market is the time and expense necessary to develop the necessary institutional knowledge and logistical expertise to meet customer demands and compete on price.

3

09-20-2019 11:42 AM        Fax Services            → 17033582271

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

15.    Success in the business, meaning profitability while serving customers, is a painstaking and costly process that requires establishing working business relationships with customers all over the world, keeping their private information private, and meeting their demands promptly and without delay.

16.    A competitor with access to SSI's Protected Information would be in a position to compete with SSI in a highly competitive market, and gain access to highly sought after customers.  In addition, divulging SSI's customers would result in loss of business due to the disclosure of customer information which is assumed to be private.

17.    SSI's competitive pricing, customer contact information, sources, institutional knowledge and its logistical expertise are among its most valuable assets and give SSI an advantage over its competitors and new entrants.

18.    SSI has invested significant time and money traveling and meeting with domestic and overseas customers, developing and maintaining its contacts, and negotiating prices.

19.    SSI has spent years building relationships and trust with its sources, including the customers, foreign importers and exporters, and other information, which allow SSI to obtain favorable pricing and ensure its customers that the source of the animals is a reputable one.

20.    By disclosing SSI's pricing, logistics, and other Protected Information, developed at significant time and expense, to competitors that would not have otherwise been able to compete for customers, SSI's competitors would be given a shortcut for identifying suppliers and navigating the logistics of importing or exporting an animal through no effort or expense of their own.

21.    Indeed, the disclosure of SSI's Protected Information would be patently unfair and contrary to the operation of the free market, because it would give competitors and potential

4

DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L LAWSUIT

competitors valuable insight into SSI's operations, resulting in pricing advantages over SSI and an advantage in future negotiations with customers.

    22.    By way of example, disclosure of the number of units and pricing will put SSI at a severe competitive disadvantage because competitors would have a baseline price which they could use to undercut SSI when negotiating with customers.

    23.    Additionally, the disclosure of SSI's customers and their information would not only give competitors the opportunity to target those customers, it would be seen as a violation of their trust, thereby undermining SSI's business relationships, and as a result harm SSI's competitiveness. Given the heightened awareness of privacy concerns in our cyber-world, these issues are even more critical in maintaining proper confidentiality and privacy from prying eyes.

    24.    For the aforementioned reasons, SSI maintains that the Protected Information is confidential commercial and financial information, which because it is vital to SSI's competitive interest, is kept private by SSI, is closely held even within the company, and should remain private and not be disclosed to or otherwise made available to the public.

    25.    Accordingly, SSI asks that the Protected Information not be disclosed.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20 day of September, 2019

Robert Vitro

5

- September 26, 2019, from Ira Block of Worldwide Primates, Inc.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

HUMANE SOCIETY INTERNATIONAL, )
                                   )
        Plaintiff,          )
                                   )
           v.         ) Civil Action No. 16-720 (TJK)
                                   )
UNITED STATES FISH AND WILDLIFE )
SERVICE, et al.,                )
                                   )
        Defendants,       )
                                   )
and                                   )
                                   )
SAFARI CLUB INTERNATIONAL,    )
                                   )
        Defendant-Intervenor.   )
_____)

**Declaration of Ira Block**

1.     I am over eighteen (18) years of age and authorized to make this declaration and statement with reference to certain facts stated herein. I base this declaration on my personal knowledge and belief and I swear under oath, that each statement is accurate and true to the best of my knowledge and belief.

2.     I am the President and Chief Executive Officer of Worldwide Primates, Inc. ("WWP").

3.     WWP is a commercial importer of non-human primates ("NHPs"), which are resold to various clients for use in preclinical testing services.

4.     I received notice from the United States Fish and Wildlife Service (the "FWS") regarding the status of the ongoing litigation, *Humane Society, Int'l v. U.S. Fish & Wildlife Serv.*, No. 1:16-cv-00720 (D.C.D.C.).

5.      WWP had previously requested the redaction of certain data relating to the following information WWP had filed with the FWS: species code, genus, species, subspecies, specific name, generic name, wildlife description, quantity, unit, value, country of origin code, country of import/export, purpose, source, disposition code, ship date, port code, U.S. importer/exporter, foreign importer/exporter for WWP's imports of NHPs during the requested period of time.

6.      That information is possessed by the FWS solely as a result of a requirement that such information be filed in order to obtain clearance of shipments of NHPs.

7.      Before a pharmaceutical product can be approved for sale in the U.S., federal regulations and the FDA require extensive research of the medicine, including animal studies, often on NHPs for certain medicines in the immunology, oncology, and neuroscience therapeutic areas.  These studies are required by law. The market for sales of NHP pharmaceutical developers and contract research organization ("CROs") is extremely competitive. WWP seeks to have the requested data redacted, as such information is considered proprietary not only by WWP, but by its competition. This is information that WWP exercises every precaution to prevent release to its competition. In general, this information is retained only within files of WWP and is not publicly releasable other than by submission to required government agencies.

8.      For pharmaceutical developers and CROs to conduct the necessary research for market approval, they must have access to a consistent and reliable supply chain for research animals such as the NHPs that WWP imports.  If our supply chain is disrupted, federally required research may become more expensive and clinical trials may be delayed, cutting into product profitability and impeding the introduction into the market of potentially life-saving medicines.  Thus, having a

111908\000001\4832-0654-7366.v1

consistent research animal supply chain is critical to competing in the pharmaceutical industry. WWP's successful role in this market is undermined by disclosure of sensitive commercial information.

9.      One of the most vital components in WWP's import process is the air carrier arrangements used to transport the NHPs between countries. WWP and other importers go to great lengths to establish these air routes and to protect them from competition and heatedly compete to secure the best arrangements and, where possible, to keep them exclusive and confidential.

10.     Release of such information as to date of import and/or export allows our competitors to determine certain flight routes and/or airline companies.

11.     Release of information as to the port of clearance allows competitors to determine which carriers service that particular port and aids competition in determining flight routes.

12.     Release of information as to names of carriers developed and/or used by WWP, will absolutely result in significant financial harm to WWP. The development of carriers involves a great deal of time, expense and effort. Disclosure of this information could allow competition to take advantage of WWP's work product. Additionally, the release of names of carriers has resulted in persistent harassment of those carriers. Much of this harassment consists of activity that could involve illegal methods.

13.     Release of information related to number of quantities within a shipment will also result in significant financial harm to WWP, as it could allow competitors to determine a number of animals in a specific shipment and analyze WWP's workflow and other aspects that could enable competitors to improperly compete against WWP. Such information could easily lead WWP's competitors to discern the scope of WWP contracts, the nature of our work and other facts that

3

would likely cause financial harm to WWP. It would also allow WWP's competition to determine the volume of our business and possibly interfere with our supply chain. In addition, the release of the quantity, genus, species, and name could enable a competitor to calculate the percentage of sales based on a particular species, and use that information when analyzing market share and other types of commercial business parameters, which could result in financial and competitive harm, as these competitors attempt to increase their market share. This could result in higher prices and/or inferior services or quality by the exporters as they attempt to serve more companies.

11.     Release of information that would identify a U.S. importer/exporter and/or foreign importer/exporter will result in significant financial harm to WWP, as competitors will then be able to identify sources of WWP imports. This information could allow competitors to determine pricing paid by WWP and offer suppliers of WWP more money, which would give them an unfair competitive advantage. Disclosure of information relating to country of origin would result in substantial financial harm to WWP, as such information could easily lead WWP's competitors to discern the breeders WWP contracts with to source its NHPs, as a finite number of breeders exist in the specific and limited countries involved in this market.

16.     Release of information relating to country codes will result in significant financial harm to WWP, as this information would easily allow competition to determine country of origin of our shipments and other information about our suppliers.

20.     Release of information that places a value on each NHP, would allow WWP's competitors to determine the price WWP pays for each animal and allow them to offer better pricing to our suppliers to our detriment.

111908\00000\4832-0654-7366.v1

21.    All of the information that WWP has asked to have kept from disclosure to HSI is information that WWP customarily and actually treats as private and does not disclose such information to the public or its competitors. Thus, WWP deems such information as confidential.

22.    Although some small subset or snapshot of this information may occasionally be publicly available, the accuracy of some of that information is questionable. Such information, in the form maintained by FWS, is not available to the public from any other sources.

23.    Additionally, WWP and other NHP importers face a unique form of competition from animal rights organizations. Organizations like the Humane Society International ("HSI") seek to damage companies that conduct federally required research on animals and other companies that provide live subjects for such mandated work. One of their primary strategies is to disrupt supply chains. To do this, these organizations frequently request import/export information from government agencies and use that information to identify research animal suppliers and transporters. They then target those suppliers and transporters with harassment for the purpose of halting or delaying animal research. If an organization such as HSI obtains information about one company's importation of NHPs, but not the corresponding information about other companies in the market, the resulting publicity could disproportionately target the company that has suffered disclosure, further upsetting an already delicate marketplace balance. In a very real way, WWP and other importers and providers of NHPs are in competition with HSI and other activist organizations.

24.    It is my belief, and historical actions have proven true, that release of the above information will cause serious competitive harm to WWP and create an unfair competitive disadvantage for WWP.

5

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date Executed:  September 26, 2019

*Ira Block*

Ira Block, President
Worldwide Primates, Inc.

111908\00000114832-0654-7366.v1

- September 26, 2019, from William M. Krulak, Jr., attorney for Worldwide Primates, Inc.



**MILES & STOCKBRIDGE** P.C.

William M. Krulak, Jr.
(410) 385-3448
wkrulak@milesstockbridge.com

September 26, 2019

**VIA EMAIL: ole_foia_submitter_notice@fws.gov**

Cathy Willis
FWS FOIA Office
Office of Law Enforcement
United States Department of the Interior
Fish and Wildlife Services
5275 Leesburg Pike
Falls Church, Virginia 22041-3803

Re:   *Humane Society Int'l v. FWS,* No.16-720

Dear Ms. Willis:

I represent Worldwide Primates, Inc. ("WWP") and am writing in response to your September 13, 2019 correspondence regarding the documents sought by Humane Society International ("HSI") in connection with the above-referenced litigation.

Exemption 4 of the FOIA exempts from release matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The Court of Appeals for the D.C. Circuit recently confirmed that "it is the law of this circuit that pricing information does come within Exemption 4." *Canadian Commercial Corp. v. Dep't of the Air Force,* 514 F.3d 37 (D.C. Cir. 2008). Exemption 4 of the FOIA is co-extensive with the Trade Secrets Act (18 U.S.C. § 1905), which prohibits federal government employees from disclosing confidential information. *Canadian Commercial Corp.,* 514 F.3d at 39, citing *CNA Fin. Corp. v. Donovan,* 830 F.2d 1132, 1151 (D.C. Cir. 1987). "Accordingly, when a person can show that information falls within Exemption 4, then the government is precluded from releasing it under the Trade Secrets Act." *McDonnell Douglas Corp. v. Widnall,* 57 F.3d 1162, 1164 (D.C. Cir. 1995). As noted in your September 13, 2019 correspondence, the recent Supreme Court decision, *Food Marketing Institute v. Argus Leader Media,* 139 S.Ct. 2356 (2019), held that confidentiality under Exemption 4 does not depend on whether disclosure of the information would cause substantial harm, but on whether the entity sharing the information typically kept it private.

As demonstrated by the enclosed declaration of Ira Block (the "Block Declaration"), the financial, shipping and related terms contained in the documents sought by HSI constitute trade secrets and confidential commercial or financial information that is protected by WWP and typically treated as confidential by WWP. As such, this information clearly falls under

Cathy Willis
FWS FOIA Office
September 26, 2019
Page 2



MILES &
STOCKBRIDGE P.C.

Exemption 4 per the *Food Marketing Institute* reasoning. Therefore, WWP continues to **strenuously** object to the disclosure of this information, and submits that the FWS is precluded from disclosing it.

As explained in the Block Declaration, WWP regards and treats the financial, shipping and related terms concerning the acquisition and shipping of non-human primates utilized in WWP's work, as trade secrets and confidential commercial or financial information that it takes reasonable steps to prevent the disclosure to third parties and typically treats as confidential. We consider the Block Declaration legally sufficient to support the FWS's withholding of the redacted portions of the documents and, under these circumstances, we believe the FWS is precluded from releasing the redacted information constituting proprietary financial terms.

Thank you for the opportunity to raise WWP's concerns regarding the disclosure of its commercially sensitive and confidential information. If you have any questions or require any additional information, please do not hesitate to contact me

Please call to discuss if that would be helpful.

Regards,

William M. Krulak, Jr.

WMK:art
Enclosure

- September 26, 2019, from Paul W. Barras of Primate Products.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HUMANE SOCIETY INTERNATIONAL, )
　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　) Civil Action No. 16-720 (TJK)
　　　　　　　　　　　　　　　　)
UNITED STATES FISH AND WILDLIFE )
SERVICE, et al.,　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendants,　　　　　)
　　　　　　　　　　　　　　　　)
and　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
SAFARI CLUB INTERNATIONAL,　　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendant-Intervenor.　)
　　　　　　　　　　　　　　　　)

## DECLARATION OF PAUL W. BARRAS

1.　　I currently serve as President and Chief Operating Officer at Primate Products ("PP").

2.　　I have a Doctorate in Veterinary Medicine (LSU 97) and a Bachelor's of Science in Animal Husbandry (UL Lafayette 94).

3.　　PP is a for profit business engaged in the practice of importing non-human primates ("NHPs") into the United States for the purpose of redistribution for use in biomedical and behavioral research.

4.　　I received notice from the United States Fish and Wildlife Service (the "FWS") regarding the status of the ongoing litigation, *Humane Society, Int'l v. U.S. Fish & Wildlife Serv.*, No. 1:16-cv-00720 (D.C.D.C.).

5.     I make this declaration based on personal knowledge for the purpose of establishing that specific information identified by PP to the U.S. Fish and Wildlife Service ("FWS") contained confidential information and was exempt from disclosure.

6.     PP had previously requested the redaction of certain data relating to the following information filed with the FWS: species code, genus, species, subspecies, specific name, generic name, wildlife description, quantity, unit, value, country of origin code, country of import/export, purpose, source, disposition code, ship date, port code, U.S. importer/exporter, foreign importer/exporter for PP's imports of NHPs during the requested period of time.

7.     That information is possessed by the FWS solely as a result of the requirement that such information be filed with FWS in order to obtain clearance of shipments of NHPs.

8.     The market for sales among NHP providers is extremely competitive. PP seeks to have the requested data redacted as such information is considered proprietary not only by PP, but by its competition. This is information that PP exercises every precaution to prevent release to its competitors.  In general, this information is retained only within files of PP and is not publicly releasable other than by submission to required government agencies.

9.     One of the most vital, sensitive, and protected sought by HSI is information relating to the air carrier arrangements developed for the transport of the non-human primates between countries.  Importers go to great lengths to establish these air routes and to protect them from competition.

10.     Release of information as to date of import and or export allows our competitors to determine certain flight routes and or airline companies.

111908\00000\4844-3147-3319.v1

11.     Release of information as to the port of clearance allows competitors to determine which carriers service that particular port and aids competition in determining flight routes.

12.     Information relating to customs identification and document numbers can be used to cross reference documents packages relating to specific imports and shipments and could reveal all of the information PP seeks to protect.

13.     Release of information as to names of carriers developed and or used by PP will absolutely result in significant financial harm to PP.  The development of carriers involves a great deal of time, expense and effort. Disclosure of this information could allow competition to take advantage of PP's work product.  Additionally, the release of names of carriers has resulted in persistent harassment of those carriers.  Much of this harassment consists of activity that could involve illegal methods.

14.     Release of information relating to waybill numbers would also result in significant financial harm as it could be used to cross reference and disclose the names of carriers and other specific details which PP seeks to protect.

15.     Release of information as it relates to number of crates contained within a shipment will also result in significant financial harm to PP as it could allow competition to determine a number of animals in a specific shipment.

16.     Release of information that would identify U.S. importer/exporter and or foreign importer/exporter will result in significant financial harm to PP as competitors will then be able to identify sources of PP purchases.  This information would allow competitors to determine pricing paid by PP and offer suppliers of PP more money which would give them an unfair competitive advantage.

3

17.    Release of information relating to genus, species, and name would allow competitors to determine the exact species that PP has been importing for resale and allow them to compete against PP.

18.    Release of information relating to CITES permits issued by foreign governments can also result in significant financial loss to PP as much of the information contained on these permits cross references other information which we are seeking to have redacted. Specifically, to name a few: importer and exporter information, genus, species, quantities, and airlines carriers.

19.    Release of information relating to country codes will result in significant financial harm to PP as this information would easily allow competition to determine country of origin of our shipments.

20.    Release of information that places a value on each non-human primate would allow PP's competitors to determine the price PP pays for each primate and allow them to offer better pricing to the detriment of PP.

21.    All of the information that PP has asked to have kept from disclosure to HSI is information that PP customarily and actually treats as private and does not disclose such information to the public or its competitors.   Thus, PP deems such information as confidential.

22.    Although some small subset or snapshot of this information may occasionally be publicly available, the accuracy of some of that information is questionable.  Such information, in the form maintained by FWS, is not available to the public from any other sources.

23.    Additionally, PP and other NHP importers face a unique form of competition from animal rights organizations.  Organizations like the Humane Society

4

International ("HSI") seek to damage companies that conduct federally required research on animals and other companies that provide live subjects for such mandated work. One of their primary strategies is to disrupt supply chains. To do this, these organizations frequently request import/export information from government agencies and use that information to identify research animal suppliers and transporters. They then target those suppliers and transporters with harassment for the purpose of halting or delaying animal research. If an organization such as HSI obtains information about one company's importation of NHPs, but not the corresponding information about other companies in the market, the resulting publicity could disproportionately target the company that has suffered disclosure, further upsetting an already delicate marketplace balance. In a very real way, PP and other importers and providers of NHPs are in competition with HSI and other activist organizations.

24.    It is my belief, and historical actions have proven true that release of the above information will cause serious competitive harm to PP and create an unfair competitive disadvantage for PP.

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**

Dated:  _26 Sept 2019_

Paul W. Barras, DVM
President and Chief Operating Officer
Primate Products

5

- September 26, 2019, from William M. Krulak, Jr., attorney for Primate Products.



MILES &
STOCKBRIDGE P.C.

William M. Krulak, Jr.
(410) 385-3448
wkrulak@milesstockbridge.com

September 26, 2019

**VIA EMAIL:** ole_foia_submitter_notice@fws.gov

Cathy Willis
FWS FOIA Office
Office of Law Enforcement
United States Department of the Interior
Fish and Wildlife Services
5275 Leesburg Pike
Falls Church, Virginia 22041-3803

Re:   *Humane Society Int'l v. FWS,* No.16-720

Dear Ms. Willis:

I represent Primate Products ("PP") and am writing in response to your September 13, 2019 correspondence (the "Correspondence"), regarding the documents sought by Humane Society International ("HSI"), in connection with the above-referenced litigation. First, please update your records to reflect that PP's current President and Chief Executive Officer is Dr. Paul W. Barras, DVM. The Correspondence was addressed and sent to Thomas Rowell, who has not been with PP for some time. Regardless, I was aware of the legal development and the need for updated submissions based on recent Supreme Court action and thus, reached out to Kenneth Perry to see if Correspondence had been misdirected. I have asked that OLE to update its records in this regard.

Exemption 4 of the FOIA exempts from release matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The Court of Appeals for the D.C. Circuit recently confirmed that "it is the law of this circuit that pricing information does come within Exemption 4." *Canadian Commercial Corp. v. Dep't of the Air Force,* 514 F.3d 37 (D.C. Cir. 2008). Exemption 4 of the FOIA is co-extensive with the Trade Secrets Act (18 U.S.C. § 1905), which prohibits federal government employees from disclosing confidential information. *Canadian Commercial Corp.,* 514 F.3d at 39, citing *CNA Fin. Corp. v. Donovan,* 830 F.2d 1132, 1151 (D.C. Cir. 1987). "Accordingly, when a person can show that information falls within Exemption 4, then the government is precluded from releasing it under the Trade Secrets Act." *McDonnell Douglas Corp. v. Widnall,* 57 F.3d 1162, 1164 (D.C. Cir. 1995). As noted in your September 13, 2019 correspondence, the recent Supreme Court decision, *Food Marketing Institute v. Argus Leader Media,* 139 S.Ct. 2356 (2019), held that confidentiality under Exemption 4 does not depend on whether disclosure of the

100 LIGHT STREET  |  BALTIMORE, MD 21202-1153  |  410.727.6464  |  milesstockbridge.com

EASTON, MD  ·  FREDERICK, MD  ·  ROCKVILLE, MD  ·  TOWSON, MD  ·  TYSONS CORNER, VA  ·  WASHINGTON, D.C.

Cathy Willis
FWS FOIA Office
September 26, 2019
Page 2

 MILES & STOCKBRIDGE P.C.

information would cause substantial harm, but on whether the entity sharing the information typically kept it private.

As demonstrated by the enclosed declaration of Dr. Paul W. Barras (the "Barras Declaration"), the financial, shipping and related terms contained in the documents sought by HSI constitute trade secrets and confidential commercial or financial information that is protected by PP and typically treated as confidential by PP. As such, this information clearly falls under Exemption 4 per the *Food Marketing Institute* reasoning. Therefore, PP continues to **strenuously** object to the disclosure of this information, and submits that the FWS is precluded from disclosing it.

As explained in the Barras Declaration, PP regards and treats the financial, shipping and related terms concerning the acquisition and shipping of non-human primates utilized in PP's work, as trade secrets and confidential commercial or financial information that it takes reasonable steps to prevent the disclosure to third parties and typically treats as confidential. We consider the Barras Declaration legally sufficient to support the FWS's withholding of the redacted portions of the documents and, under these circumstances, we believe the FWS is precluded from releasing the redacted information constituting proprietary financial terms.

Thank you for the opportunity to raise PP's concerns regarding the disclosure of its commercially sensitive and confidential information. If you have any questions or require any additional information, please do not hesitate to contact me

Please call to discuss if that would be helpful.

Regards,

William M. Krulak, Jr.

WMK:art
Enclosure

- September 26, 2019, from Larry Fudem of Fourrures Wolfie Furs, Inc., complete with an Exhibit A of its own.



**Fourrures Wolfie Furs Inc**
1625 Chabanel West Suite #502   Montreal, Quebec  H4N 2S7
Tel (514) 842-5391  (Fax) 514 842-7252  email: larry@furshopping.com

Montreal, September 26, 2019

Declaration submitted in connection with humane society int'l Foia lawsuit

William C. Woody
Assistant Director, Office of Law Enforcement
U.S. Fish and Wildlife Service
Office of Law Enforcement (FOIA)
5275 Leesburg Pike (MS: OLE)
Falls Church, VA  22041

**RE:**   *Humane Society International v. U.S. FWS, No. 16-720,*

Dear Mr. Woody:

This letter responds on behalf of Wolfie furs to a letter from the U.S. Fish and Wildlife Service ("FWS") requesting additional information regarding the competition that Wolfie furs faces in the wildlife import/export trade.  Thank you for the opportunity to clarify how the public disclosure of the confidential commercial information requested by the Humane Society International would cause substantial competitive harm to Wolfie Furs.

First, Wolfie Furs incorporates by reference its first objection letter, dated November 22, 2016 (attached hereto as Exhibit A).  In that letter, Wolfie furs sought exemption from disclosure under FOIA exemption 4, 6, and 7(C).  Via the following sections excerpted below, Wolfie Furs detailed how the release of its confidential commercial information would be likely to cause substantial harm, as required by Exemption 4:

- Page 2: "Our business is a commercial entity that imports and exports animal products for commercial purposes.  For example, by publicly releasing the business' import data, including all of the variables set forth in paragraph c. in the Background section of the Federal Register notice, our competitors in the marketplace will obtain access to the business' acquisition costs.  Through this information, competitors will be able to determine the business' pricing guidelines and other financial algorithms."

- Page 2: "Furthermore, based on the release of overall number of imports and the port codes, species, quantity, unit, and value of the wildlife, our competitors may be able to determine the size and growth of our business' commercial and financial operations. "

In response to the questions posed in your clarification request, Wolfie Furs submits that the information at issue is both customarily and treated as private by its owner, and therefore is confidential. Wolfie Furs has not disclosed the information to the public.

Based on the foregoing information and based on the reasons set forth in Wolfie Furs original letter (Exhibit A), Wolfie Furs contends that its LEMIS data constitutes confidential financial and commercial information and should be protected from disclosure by FOIA Exemption 4.

Wolfie Furs provides the confidential information in this objection voluntarily. Because the information in this objection is provided voluntarily, it is exempt from disclosure if it is "of a kind that would customarily not be released to the public." *See Critical Mass Energy Project v. NRC*, 975 F.2d 871, 879 (D.C. Cir. 1992); *see also McDonnell Douglas Corp. v. NASA*, No. 93-1540, 1993 WL 796612, at *1 (D.D.C. Nov. 17, 1993) (determining that comments are voluntarily submitted to an agency when the agency's regulations "clearly did not require . . . [the submitter] to provide any comments whatsoever."). Therefore, in the event of a FOIA request for this objection, we request that this letter be withheld because it contains private information pertinent to Wolfie Furs business model which is "customarily" not disclosed to the public. Alternatively, Wolfie Furs also requests that if the FWS decides to release this document, all such identifiable information be redacted before this document is disclosed.

Sincerely,

Vice President

EXHIBIT A-1



**Fourrures Wolfie Furs Inc**
1625 Chabanel West Suite #502  Montreal, Quebec  H4N 2S7
Tel (514) 842-5391  (Fax) 514 842-7252  email: larry@furshopping.com

U.S. Fish and Wildlife Service
Office of Law Enforcement (FOIA)
5275 Leesburg Pike (MS: OLE)
Falls Church, VA  22041

      RE:    *Humane Society International v. U.S. FWS, No. 16-720,*
             *Reference No. 7202.4-OS-2-16-00042*

Dear Mr. Jenkins:

    This letter responds to the Federal Register Notice at 81 Fed. Reg. 75838 (Nov. 1, 2016) and the November 1, 2016 letter from the FWS (7202.4-OS-2016-00042) that appears on the U.S. Fish and Wildlife Service's (FWS) website, both of which relate to *Humane Society International v. U.S. FWS,* No. 16-720, Reference No. 7202.4-OS-2-16-00042.

    To the best of my recollection, Wolfie Furs has participated in the exportation and/or importation and/or exportation of wildlife into and/or from the United States in one or more of the years including 2002-2010, 2013, and 2014; thus, we believe that identifying and competitive information about the business is present in your Law Enforcement Management Information System ("LEMIS") for those years.  Wolfie Furs vigorously objects to the disclosure of our business's identity as involved in the import/export of these legally imported animal products, and to the disclosure of the value of the wildlife, and other submitted information to Humane Society International (HSI) and/or to any individual or organization that seeks that information. It was our understanding when we submitted that information in connection with the filing of our import/export declarations (Form 3-177), that such information would be exempt from disclosure under the Freedom of Information Act (FOIA).  Indeed, information about the business's identity should be exempt from disclosure under FOIA Exemption 4 and under FOIA Exemptions 6 and 7(C) for the following reasons.

    First, the requested information should be exempt from disclosure under FOIA Exemption 4, which covers matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  To be confidential, a disclosure must be likely "to cause substantial harm to the competitive position of the person from whom the information was obtained." *CriticalMass Energy Project v. NRC*, 975 F. 2d 871, 878

EXHIBIT A-2

(D.C. Cir. 1992) (en banc) (citation omitted).  The FWS's disclosure of the business's information to HSI, if made public, would place my business at a competitive disadvantage by causing substantial commercial and financial harm to my wholesale and retail business interests.  Wolfie Furs is a commercial entity that imports and exports animal products for commercial purposes. For example, by publicly releasing the business' import data, including all of the variables set forth in paragraph c. in the Background section of the Federal Register notice, our competitors in the marketplace will obtain access to the business' acquisition costs.  Through this information, competitors will be able to determine the business' pricing guidelines and other financial algorithms.  Furthermore, based on the release of overall number of imports and the port codes, species, quantity, unit, and value of the wildlife, our competitors may be able to determine the size and growth of our business' commercial and financial operations.

If certain animal rights groups such as HSI had access to this sensitive and confidential information, they could – and very likely will – devise targeted strategies to impact the business' retail interests.  HSI policies are designed to influence the public and to, among other things, persuade the public not to do business with importers of certain animal products.  If HSI gains access to the business's identifiable information, HSI will take similar actions to negatively influence the business's reputation – and, in turn, effect its ability to compete.  For example, HSI or other anti-animal use groups could disseminate the business' identity and information pertaining to its number of imports via social media with the goal of inciting boycotts or protests – relying on similar methods to how HSI has attacked other animal use businesses in the past.

Additionally, the business's identity as an importer/exporter of wildlife should be protected from disclosure by Exemptions 6 and 7(c) of FOIA, as the disclosure of the individual names associated with the business "would constitute a clearly unwarranted invasion of personal privacy."  The LEMIS files that contain the business's identity, other personal identifying information associated with the persons running the business, fall within the "similar" files category of Exemption 6 that courts have interpreted very broadly to protect information included in a variety of types of files that contain personal information.  Release of such information will not advance the goals of FOIA – and it, instead, will relate solely to the private business interests of certain businesses who import and export wildlife products.

In conclusion, we believe the release of the requested information will not advance the purposes of FOIA and that the information should be exempt from disclosure under FOIA Exemptions 4, 6 and 7(C).  We also incorporate the arguments put forward by Fur Information Council of America, a coalition which also has notified your office that it objects to disclosure of the LEMIS records under the same FOIA exemptions on behalf of its membership.

Sincerely,

Larry Fudem
Vice-president

2

- Undated, from Lea Jaunakais of Tiger World, Inc., d/b/a Tiger World Endangered Wildlife Preserve.

 **Tiger World Endangered Wildlife Preserve**

4400 Cook Road, Rockwell, NC 28138-7583
(704) 279-6363
www.tigerworld.us  /  tigerworldsc@aol.com

U.S. Fish and Wildlife Service             VIA email
Office of Law Enforcement
5275 Leesburg Pike (MS-OLE)               ole_foia_submitter_notice@fws.gov
Falls Church, VA 22041-3803


Federal Register Notice 81 Fed
Reg. 75838 (Nov. 1, 2016)


DECLARATION SUBMITTED IN CONNECTION WITH HUMANE SOCIETY INT'L FOIA
LAWSUIT

Dear Sirs:

In response to the USFWS Letter dated September 6, 2019, Tiger World, Inc. DBA Tiger
World Endangered Wildlife Preserve ("Tiger World") **certifies** with respect to the LEMIS data
referenced and specified in the USFWS letter

1) that the information at issue is both customarily and actually treated as private by
   Tiger World, its owner,

2) that the information is therefore confidential,

3) that Tiger World has not disclosed the information to the public, and

4) that the information is not routinely available to the public from other sources.

Please acknowledge receipt of this email.

Respectfully,

Tiger World, Inc.

By: _____

Lea Jaunakais, President & Founder