UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HUMANE SOCIETY INTERNATIONAL,

    *Plaintiff*,

  v.

UNITED STATES FISH AND WILDLIFE
SERVICE et al.,

    *Defendant*s,

and

SAFARI CLUB INTERNATIONAL,

    *Defendant-Intervenor*.

Civil Action No. 16-720 (TJK)

## MEMORANDUM OPINION

Humane Society International, a nonprofit that promotes animal conservation and welfare, requested records maintained by the Fish and Wildlife Service about the import and export of wildlife under the Freedom of Information Act. The agency released the records but redacted certain categories of information under exemptions for commercial, private personal, and law enforcement information. Humane Society International sued to challenge those redactions, and the Court allowed Safari Club International to intervene as a defendant. After the parties cross moved for summary judgement, the Court entered partial summary judgment for Defendants on the applicability of some exemptions but ordered further briefing on the effect of the Supreme Court's decision in *Food Marketing Institute v. Argus Leader Media,* 139 S. Ct. 2356 (2019), on when the government may withhold commercial information under FOIA's Exemption 4. With the benefit of the parties' renewed motions, the Court finds that the

information at issue is not confidential under Exemption 4 and enters summary judgment for Humane Society International on its claims related to that exemption.

I.  **Factual and Procedural Background**

This dispute's background was described in the Court's prior opinion.  *See Humane Soc'y Int'l v. U.S. Fish & Wildlife Serv.*, 394 F. Supp. 3d 67, 71–73 (D.D.C. 2019).  In brief, Humane Society International (HSI) requested certain information from the Fish and Wildlife Service ("the Service") stored in its Law Enforcement Management Information System (LEMIS).  The LEMIS database contains information that wildlife importers and exporters provide to the Service when submitting Form 3-177, which is required to import or export wildlife or wildlife products.  *Id*. at 72.  The categories of information within the LEMIS database at issue include the following: "Species Code; Genus; Species; Subspecies; Specific Name; Generic Name; Wildlife Description; Quantity; Unit; Value; Country of Origin Code; Country if Import/Export; Purpose; Source; Action; Disposition Code; Disposition Date; Ship Date; Import/Export; Port Code; U.S. Importer/Exporter; and Foreign Importer/Exporter."  ECF No. 54 at 44–74 ("Pl.'s SOF") ¶ 47.  The Service originally withheld this and other information under FOIA Exemptions 4, 6, and 7.

The parties' only remaining dispute concerns the applicability of Exemption 4 to this information as it pertains to the activities of corporate importers and exporters.  The Court previously entered partial summary judgment for the Service, the Department of the Interior, the Secretary of the Interior, and Defendant-Intervenor Safari Club International ("Defendants") and held that the Service had appropriately invoked Exemption 7(c) to redact the names of individual persons listed on Form 3-177.  *Humane Soc'y Int'l*, 394 F. Supp. 3d at 78.  That ruling also disposed of the Service's invocation of Exemption 6 relating to the same redactions, *id.* at 74, as

well as HSI's claim under the Administrative Procedure Act, *id.* at 78–79.[1] But following the close of summary judgment briefing, the Supreme Court had issued its decision in *Food Marketing Institute*, which addressed the legal test for withholding records under Exemption 4. Thus, the Court ordered renewed briefing accounting for the intervening change of law. *Humane Soc'y Int'l*, 394 F. Supp. 3d at 74. The parties then renewed their motions for summary judgment on HSI's claims relating to Exemption 4.

Besides addressing the effect of that case, Defendants have also supplemented the record. The Service originally submitted objections to disclosure of the information at issue from companies whose LEMIS data had been requested by HSI. *See* ECF No. 33 ("Hyde-Michaels Decl. Exs."). Following *Food Marketing*, the Service also contacted the firms whose data it still contends it may withhold under Exemption 4. *See* ECF No. 50-2 ("Willis Decl. Exs."). The Service invited the companies to certify, echoing the test set out by the Court, that they "customarily and actually" treat the requested information as private, they have "not disclosed the information to the public," "the information is not routinely available to the public from other sources," and "the information is therefore confidential." *Id.* at 7; ECF No. 50-1 ("Willis Decl.") ¶ 9. Twenty-four of those companies responded. Pl.'s SOF ¶ 52.

## II.    Legal Standards

"Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no

---

[1] HSI also asserts a claim that the Service failed to adhere to FOIA's statutory deadlines, but as the parties have implicitly recognized by failing to address that claim in their motions, "the FOIA does not create a cause of action for an agency's untimely response to a FOIA request. The statute clearly provides a requester a remedy for an agency's non-compliance with its time limit provisions: a direct avenue to the district courts to 'enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.' 5 U.S.C. § 552(a)(4)(B)." *Ocasio v. U.S. Dep't of Justice*, 70 F. Supp. 3d 469, 476–77 (D.D.C. 2014) (quoting *Bangoura v. Dep't of Army*, 607 F. Supp. 2d 134, 142 n.6 (D.D.C. 2009)).

reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.–Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). "The evidence presented must show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*. (quoting Fed. R. Civ. P. 56(a)). The "majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Under FOIA, a federal agency must "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008). FOIA creates a "strong presumption in favor of disclosure," which "places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). An agency can meet its burden "through affidavits or declarations that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *PETA v. U.S. Dep't of Health & Hum. Servs.*, 901 F.3d 343, 349 (D.C. Cir. 2018) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Affidavits that are "conclusory, merely reciting statutory standards," cannot support summary judgment. *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (citation omitted). This standard also applies to third-party affidavits or declarations. *See Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999) (rejecting government and private party affidavits containing "conclusory and generalized assertions").

### III. Analysis

#### A. Legal Framework

FOIA's Exemption 4 permits federal agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). To show that this exemption shelters the information withheld, the Service must show that it is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). The parties focus their arguments on the second and third prong, but because the Court finds that the information is not confidential under the third prong, it need not address the others.

As noted, *Food Marketing* addressed the test for when information is confidential under Exemption 4. 139 S. Ct. 2356 (2019). In that case, the Court discussed two potential conditions for information communicated to another to be found "confidential": that (1) the information is "customarily kept private, or at least closely held, by the person imparting it"; and (2) the party receiving the information "provides some assurance that it will remain secret." *Id.* at 2363. The Court held that the first condition must be met but left open whether the second also had to be—in other words, whether privately held information could "lose its confidential character for purposes of Exemption 4 if it's communicated to the government without assurances that the government will keep it private." *Id.* Thus, regardless of the status of the second prong, the government must show that the commercial or financial information is "both customarily and actually treated as private" to withhold it. *Id.* at 2366.

*Food Marketing* abrogated the D.C. Circuit's decision in *National Parks & Conservation Association v. Morton*, 498 F.2d 765 (D.C. Cir. 1974). *National Parks* had established a two-part test to determine whether information submitted to the government was "confidential" under Exemption 4. Under that test, information was confidential if disclosing it would either "(1)

5

impair the Government's ability to obtain necessary information in the future; or (2)[ ] cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks*, 498 F.2d at 770.  In a later case, *Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C. Cir. 1992) (en banc), the Circuit limited that test to information parties submit to the government *involuntarily*, and established a different test for information provided *voluntarily*: whether it is "of a kind that would customarily not be released to the public by the person from whom it was obtained."  975 F.2d at 879.  But in abrogating *National Parks*, the Supreme Court also made clear that the test for confidentiality under Exemption 4 does not differ based on whether the government has compelled its submission.  *Food Marketing*, 139 S. Ct. at 2365.

### B.     Whether the Companies Customarily and Actually Treat the Information at Issue as Private

The "heart of the [confidentiality] test" asks whether the Defendants can show the third-party objectors customarily and actually treat the information at issue as private.  *Renewable Fuels Ass'n & Growth Energy v. EPA*, -- F. Supp. 3d --, 2021 WL 602913, at *6 (D.D.C. Feb. 16, 2021).  And when assessing a third-party's claim of confidentiality under Exemption 4, "the court will consider how the particular party customarily treats the information, not how the industry as a whole treats the information."  *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001).

#### 1.     The Companies' Declarations

In support of their decision to withhold the LEMIS data, Defendants submitted over a hundred separate objections from third parties claiming that their information is exempt under Exemption 4.  *See* Hyde-Michaels Decl. Exs. 33-1–33-6; Willis Decl. Exs. at 10–115.

Defendants submitted two groups of objections, both before and after *Food Marketing* was decided.  ECF No. 60 at 5–6.

The problem for Defendants is that almost all of these declarations do not help them meet their burden of showing that the companies customarily and actually treat the information as private.  For starters, many of the declarations are inadmissible hearsay.  "Rule 56 clearly contemplates the submission of declarations in support of summary judgment."  *Brooks v. Kerry*, 37 F. Supp. 3d 187, 203 (D.D.C. 2014).  But such declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Notarized sworn affidavits are the gold standard, but federal law allows "[u]nsworn declarations, subscribed by the declarant as true under penalty of perjury, [to] be substituted for affidavits."  *Jarvik v. C.I.A.*, 741 F. Supp. 2d 106, 110 n.3 (D.D.C. 2010) (citing 28 U.S.C. § 1746); *see also Weber v. U.S. Dep't of State*, 885 F. Supp. 2d 46, 50 n.3 (D.D.C. 2012) (unnotarized affidavit "not a proper affidavit").  In contrast, courts cannot consider unsworn submissions lacking the required perjury statement at summary judgment because they amount to inadmissible hearsay.  And "statements that are impermissible hearsay . . . are precluded from consideration by the Court."  *Brooks*, 37 F. Supp. 3d at 201 (citation omitted); *see also* Fed. R. Civ. P. 56(c)(4).  Moreover, while it is true that courts may consider hearsay to decide certain FOIA-related disputes, "it is a different matter to rely on out-of-court statements from private third-parties to justify an agency's withholding."  *Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019) (declining to consider government affidavit relying on third-party submissions); *see also Pub. Citizen Health Research Grp. v. Nat'l Inst. of Health*,

209 F. Supp. 2d 37, 48 n.7 (D.D.C. 2002) (refusing to rely on third-party letters in Exemption 4 case "due to hearsay concerns").

Nearly all the objections the Service submitted were not notarized and were not made under the penalty of perjury, thereby constituting inadmissible hearsay. Defendants make no argument explaining why the Court should consider their content, nor have Defendants requested time to cure them, despite knowing about this issue for over a year since HSI first raised the issue in its first motion for summary judgment. ECF No. 36 at 20–22 (June 22, 2018). Rather than explain why the Court should consider their content, Defendants pivot by "offer[ing] [the declarations] for the fact that the submission exists, *i.e.*, the submitter objected to the public release of potentially confidential information by answering the Agency's request." ECF No. 60 at 7–8 n.9. But just because a company has objected says nothing about whether it customarily and actually treats the information as private.

Second, most of the remaining objections are substantively deficient. Take the more recent objections submitted by Defendants. Of the fourteen that are not inadmissible hearsay, twelve are conclusory; in other words, they do not attest to specific facts indicating how each objector treats the relevant data.[2]  *See Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 906 (D.C. Cir. 1999) (Exemption 4 withholding was inappropriate because corporate affidavit contained "only conclusory assertions that disclosure would cause substantial competitive harm"); *Niagara Mohawk*, 169 F.3d at 18 ("conclusory and generalized assertions" in corporate

---

[2] Like many of the post-*Food Marketing* objections, the majority of pre-*Food Marketing* objections are inadmissible hearsay. Only four meet the Rule 56 criteria and one happens to be from BioIVT, LLC, a company that submitted a post-*Food Marketing* objection the Court considers below. *See* ECF No. 33-2 at 84–85. As for the remaining three, the Service only submitted redacted copies, and so the Court has no way to review their contents. *See* ECF No. 33-4 at 25–27, 87–92; ECF No. 33-5 at 11–14, 18–20.

affidavits were "not enough to establish" Exemption 4 applied).  To take one example, the declaration from Bushmaster Reptiles merely parrots the language requested by the Service by stating that the company "considers its LEMIS data . . . to be private," "treats the [information] as both customarily and actually private," "has not disclosed such information . . . to the public," and "believes that the information . . . is not routinely available to the public from other sources." Willis Decl. Ex. at 47–49.  Such a certification does not provide the Court with facts against which to apply the *Food Marketing* test.  The declaration *does* assert that, "if released, [the information] would disclose Bushmaster's pricing guidelines, financial algorithms and strategic business information to competitors." *Id.* at 48.  But these representations echo the old *National Parks* standard and have little, if any, relevance now.  Perhaps they circumstantially suggest that the company *should* keep the information private, but they hardly shed light on whether the company does so.

In contrast, two of the objectors—BioIVT, LLC and Oregon Health & Science University—provided declarations that describe how they customarily and actually treat the relevant data that support the notion that they keep it private.  The Senior Director of Biologic Operations at BioIVT represents that the company protects the information by executing confidentiality agreements with its employees and contractors, as well as non-disclosure agreements with its customers, auditors, investors and prospective investors.  Willis Decl. Ex. at 43–44.  BioIVT limits access to the information on a "need-to-know basis" and maintains a company-wide confidentiality policy and program for training employees on the confidentiality of the information, how to guard it, and how to report suspected and actual breaches.  *Id.* at 44.  To that end, BioIVT has created the position of a privacy officer responsible for overseeing the protection of confidential information.  *Id.*  BioIVT also physically safeguards hard-copy

materials, password-protects electronic materials, and maintains industry standard network security.  *Id.*  Finally, BioIVT prohibits its partners and customers from publishing information that they derive from BioIVT services or products until BioIVT completes a pre-publication review for the information.  *Id.*  While Oregon Health & Science University's representations are not quite as complete, its in-house counsel represents that it keeps its U.S. Importer/Exporter and Foreign Importer/Exporter information private by "limiting access to the information, storing the information in secure folders, removing as much identifying information as possible and avoiding public access and/or publication of the information."  Willis Decl. Ex. at 66.[3]  At least as for these two objectors, then, there is competent evidence in the record in the form of their declarations that suggests they customarily and actually keep the data private.  But these declarations are not the end of the story.

### 2. Additional Considerations, Including Whether the Government Must Provide an Assurance of Confidentiality

The parties spill much ink on whether, after *Food Marketing*, the government must provide an assurance of confidentiality for the information to be confidential under Exemption 4. ECF No. 52 at 4–5; ECF No. 54 at 26–27, 29–30; ECF No. 60 at 8–9; ECF No. 64 at 17–20.  The Court can dispose of this dispute quickly by agreeing with the finding of one court that, because the extensive D.C. Circuit precedent interpreting Exemption 4 says nothing about such a

---

[3] HSI also argues that Oregon Health & Science University's declaration does not meet the Rule 56 requirement that it be made "on personal knowledge" because the declarant and in-house legal counsel, D. Raghav Shan, relied on "OHSU personnel who have assisted me in gathering this information from our institution."  Willis Decl. Ex. at 64; ECF No. 55 at 20.  But the Society fails to mention that Shan also compiled the information "through personal knowledge" and "on the basis of the documents that have been provided to and/or reviewed by me."  Willis Decl. Ex. at 64.  The Court is satisfied that Shan's declaration meets the requirement that a declaration "be made on personal knowledge."  Fed. R. Civ. P. 56(c)(4); *see also Leopold v. U.S. Dep't of Justice*, No. 19-3192 (RC), 2021 WL 124489, at *5 (D.D.C. Jan. 13, 2021) (finding declarations met personal knowledge requirement on similar facts).

requirement, imposing one "would essentially be overruling" or "at least declining to faithfully apply" that precedent. *Renewable Fuels*, 2021 WL 602913, at *7.

Still, that does not mean that representations the government makes in connection with obtaining information cannot inform the court's determination about how the companies customarily and actually treat it, or whether it is confidential, for purposes of Exemption 4. In fact, in *Food Marketing*, the Court cited with approval Circuit precedent suggesting just that. 139 S. Ct. at 2363 (citing S*terling Drug, Inc. v. FTC*, 450 F.2d 698 (D.C. Cir. 1971) (noting that since the third parties "sought to prevent public disclosure of these documents, and the Commission ha[d] agreed to treat them as confidential," the information remained the type "which would customarily not be released to the public by the person from whom it was obtained")). And even after *Food Marketing*, courts in this District have continued to recognize that the circumstances under which a company submits information to the government bears on whether that information remains confidential.[4] Similarly, after *Food Marketing*, whether the government has disclosed the same type of information on prior occasions remains a consideration when weighing whether the information is confidential. *See Renewable Fuels*, 2021 WL 602913, at *8 ("history of releasing the information at issue" informs expectation of confidentiality).

---

[4] *See, e.g.*, *Renewable Fuels*, 2021 WL 602913, at *8 (proposing that "privately held information is generally confidential absent an express statement by the agency that it would not keep information private, or a clear implication to that effect."); *Stotter v. U.S. Agency for Int'l Dev.*, No. 14-cv-2156 (KBJ), 2020 WL 5878033, at *5 (D.D.C. Oct. 3, 2020) (it is "clear beyond cavil [that assurance of privacy] is relevant to determining whether financial information is" confidential); *Shapiro v. Dep't of Justice*, No. 12-cv-313 (BAH), 2020 WL 3615511, at *26 (D.D.C. July 2, 2020) (whether agency "provided an 'assurance of privacy' is undoubtedly relevant" to determining confidentiality); *Gellman v. Dep't of Homeland Sec.*, -- F. Supp. 3d --, 2020 WL 1323896, at *11 n.12 (D.D.C. Mar. 20, 2020) (treating assurance of confidentiality "as one factor to consider").

11

These factors strongly weigh against finding that the information in the LEMIS database provided by BioIVT and Oregon Health & Science University—and by the other companies, even if their objections did not pass evidentiary muster—is confidential.  First, as HSI points out, the Privacy Act Notice on Form 3-177 during the relevant years informed them that the information they submitted "may be subject to disclosure under provisions of the Freedom of Information Act."  Pl.'s SOF ¶¶ 35–37; ECF No. 54-1 ¶¶ 5–10; *id.* at 5–53.  Thus, this notice warned these companies that the government would not keep the information at issue confidential and might disclose it pursuant to a FOIA request.  In effect, then, the notice *disclaimed* confidentiality, rather than provided an assurance of it.  *Cf. WP Co. v. U.S. Small Bus. Admin.*, -- F. Supp. 3d --, 2020 WL 6504534, at *9 (D.D.C. Nov. 5, 2020) (determining that Exemption 4 was inapplicable because loan application expressly warned that applicants' "names and loan amounts would be 'automatically released' upon a FOIA request").  And given what Defendants actually told these companies through the Privacy Act Notice, their representations about what they would have told them if given a do-over are simply of no moment.  ECF No. 60 at 9.

Second, HSI emphasizes, for over a decade before its FOIA request in this case, the Service did not "redact[] any LEMIS data pursuant to FOIA exemptions in response to a FOIA requests [sic] by [the Society] or its affiliate."  Pl.'s SOF ¶ 39; ECF No. 36-1 ¶¶ 25–28.  Defendants' historical release of the information at issue again suggests that the information is not confidential.  And critically, neither Oregon Health & Science University nor BioIVT objected when this same data from different years was disclosed to a plaintiff in a previous FOIA

case.[5]  Pl.'s SOF ¶¶ 62–65.  Simply put, that failure is inconsistent with the notion that these companies customarily and actually treat the information as private such that it is confidential under Exemption 4.

For all these reasons, the Court will grant HSI's motion for summary judgment, and deny Defendants' and Defendant-Intervenor's, as to the application of Exemption 4 to the LEMIS data at issue.  A separate order will issue.

/s/ Timothy J. Kelly<br>TIMOTHY J. KELLY<br>United States District Judge

Date: March 29, 2021

---

[5] In addition, HSI points out, the Service has published some of Oregon Health & Science University's import-export permit applications that contain some of the data at issue, as required by law.  ECF No. 54 at 24; Pl.'s SOF ¶¶ 8, 18.